**Clifford GORDON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–98–00173–CR.**

Court of Appeals of Texas,
El Paso.

June 17, 1999.

---

**28.** *Ante,* at 22.

**29.** *Brabson,* 976 S.W.2d at 206–207 (Price, J., dissenting to denial of motion for rehearing).

J. Michael Swanson, Monahans, for Appellant.

Walter M. Holcombe, County Attorney, Pecos, for the State.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

McCLURE, Justice.

Clifford Gordon appeals from a judgment revoking community supervision and reducing the term of imprisonment originally assessed for the offense of possession of marihuana to seven years. *See* TEX. CODE CRIM.PROC.ANN. art. 42.12, § 23(a) (Vernon Supp.1999). Appellant challenges the judgment by three points of error. We reverse.

### FACTUAL SUMMARY

On October 16, 1992, Appellant entered a negotiated plea of guilty to the offense of possession of over five pounds but less than fifty pounds of marihuana, a second degree felony. In accordance with the plea bargain, the trial court deferred entering a finding of guilt and placed Appellant on probation for seven years. The State subsequently filed a motion to proceed with adjudication of guilt which the trial court heard on December 13, 1993. Based on Appellant's plea of true, the trial court adjudicated him guilty and assessed punishment at imprisonment for a term of ten years, probated for ten years. On September 12, 1997, the State filed a motion to revoke alleging eight violations of the terms and conditions of probation, including an allegation that Appellant illegally possessed cocaine in Midland County on August 14, 1997. Appellant responded with a motion to suppress the cocaine because it was seized following his illegal arrest.

The evidence introduced at the contested revocation hearing showed that Officers Tim Stone and Robby Mobley of the Midland Police Department received information from a narcotics officer that Beni-to Melendez Gonzalez, who had outstanding felony warrants, was located at 1101 East California in Midland, Texas. Consequently, Stone and Mobley, along with Officer Phillip Breeding and other police officers, went to the residence at approximately 10 p.m. in an effort to locate and arrest Gonzalez. Stone knew from a recent arrest of Gonzalez that he might be armed and he passed this information on to the other officers. Additionally, the officers knew that Gonzalez had the reputation of being a violent offender.

The owner of the residence, identified only as "Crawdad," consented to the officers' entry. In addition to Crawdad, the officers found Appellant in the living room of the residence. While the other officers looked for Gonzalez, Breeding sat with Appellant on a couch in the living room. Within minutes of the entry, Mobley found Gonzalez on a bed in one of the bedrooms, arrested him, and placed him in handcuffs. He then brought Gonzalez into the living room before taking him outside to his patrol car. In the bedroom where Gonzalez had been found, the officers also discovered a small amount of marihuana and narcotics paraphernalia, such as syringes and balloons commonly used to package heroin. Consequently, they decided to detain all of the occupants, including Appellant, while a K-9 officer and his dog searched the premises. Breeding explained that the removal of the occupants during such a search is their ordinary procedure. Breeding conducted a weapons patdown of Appellant, handcuffed him, and took him outside. Before placing Appellant in the rear of his patrol car, Breeding lifted the seat to show Appellant that there was nothing under the seat. Appellant remained in the rear seat of the patrol car for approximately one hour. After the search had been completed and no narcotics had been found, the officers decided to release Appellant. Breeding removed Appellant from the car and turned him over to Officer Tim Stone for removal of the handcuffs. Breeding lifted the rear seat

and found a single rock of crack ·cocaine. He immediately arrested Appellant for possession of cocaine.

At the conclusion of the hearing on the State's motion to revoke and Appellant's motion to suppress, the trial court found that even though Appellant had been arrested unlawfully, the cocaine was not seized as a product of that arrest, and therefore, suppression of the evidence was not required. Accordingly, the court further found that Appellant violated two conditions of his probation by committing the offense of possession of cocaine. The court revoked Appellant's probation, but reduced his punishment from imprisonment for a term of ten years to seven years pursuant to Tex.Code Crim.Proc. Ann. art. 42.12, § 23(a).

**ILLEGAL ARREST OR DETENTION?**

In three related points of error, Appellant contends that the trial court abused its discretion in revoking his probation because the evidence derived from his unlawful arrest should have been suppressed leaving no evidence to support a finding that he violated his probation by possessing cocaine. The State first takes issue with the trial court's determination that an illegal arrest occurred. It argues alternatively that the court correctly concluded that the cocaine was not the product of the illegal arrest because it had been abandoned by Appellant before any arrest. Finally, the State alternatively argues that Appellant's failure to pay his supervisory fees supports the revocation order, and therefore, no abuse of discretion is shown. We will address these arguments in the order presented.

*Standards of Review*

This appeal involves two overlapping standards of review. First, in reviewing the trial court's decision to revoke probation, it must be kept in mind that the trial court possesses substantial discretion. When the State has sustained its burden of proving the allegation by a preponderance

of the evidence and no procedural obstacle is raised, the decision whether to revoke probation is within the discretion of the trial court. *Flournoy v. State*, 589 S.W.2d 705, 707 (Tex.Crim.App.1979); *Williams v. State*, 910 S.W.2d 83, 85 (Tex.App.—El Paso 1995, no pet.). Under such circumstances, the trial court's discretion is substantially absolute. *Flournoy*, 589 S.W.2d at 708. Thus, the *only* question presented on appeal is whether the trial court abused its discretion in revoking probation. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim.App.1981); *Lloyd v. State*, 574 S.W.2d 159, 160 (Tex.Crim.App.1978). If a single ground for revocation is supported by a preponderance of the evidence and is otherwise valid, then an abuse of discretion is not shown. *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex.Crim.App.1980); *Jones v. State*, 571 S.W.2d 191, 193–94 (Tex.Crim.App.1978); *Gobell v. State*, 528 S.W.2d 223, 224 (Tex.Crim.App.1975).

Second, a trial court's ruling on a motion to suppress is generally reviewed for an abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996); *Brewer v. State*, 932 S.W.2d 161, 166 (Tex.App.—El Paso 1996, no pet.). Under this standard, an appellate court must defer to a trial court's determination of historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Although great weight should be given to the inferences drawn by trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause are reviewed *de novo* on appeal. *Guzman*, 955 S.W.2d at 87, *citing Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *see Loesch v. State*, 958 S.W.2d 830, 831–32 (Tex.Crim. App.1997).

*Temporary Detention v. Arrest*

As demonstrated by its argument, the State does not dispute that a

seizure of Appellant occurred. The first issue we must resolve, then, is whether that seizure is a valid investigative detention or whether, as concluded by the trial court, it escalated into an arrest which must be supported by probable cause. Both the Fourth Amendment and Article I, Section 9 of the Texas Constitution guarantee individuals the right to be free from unreasonable seizures. U.S. CONST. Amend. IV; TEX. CONST. Art. I, § 9; *Brewer*, 932 S.W.2d at 167. A stop of an individual by the police violates these guarantees only if (1) the stop or detention constitutes a seizure and (2) the seizure is unreasonable. *Brewer*, 932 S.W.2d at 167. It is undisputed that a seizure of Appellant occurred for purposes of both the Fourth Amendment and Article I, § 9 since Breeding limited Appellant's physical movement by handcuffing him and placing him in the rear seat of the patrol car. *See California v. Hodari D.*, 499 U.S. 621, 626–28, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991) (holding that a person has not been seized until he has yielded to a law enforcement officer's show of authority or when officers physically limit his movement); *Johnson v. State*, 912 S.W.2d 227, 234 (Tex.Crim.App.1995) (applying *Hodari D.* to Article I, § 9 of the Texas Constitution).

Citing primarily *Pickens v. State*, 712 S.W.2d 560, 562 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd), Appellant argues, as he did in the trial court, that being handcuffed and placed in the back of a patrol car is the equivalent of an arrest. In *Pickens*, a forgery case, a police officer observed the defendant walking slowly around the outside corridor of a Galveston motel. Pickens continued to look slowly around before leaning over the bannister and speaking to someone in the parking lot. After awhile, the officer, who knew of a history of burglaries at the motel, saw Pickens driving an automobile slowly through the parking lot. When the officer attempted to follow, Pickens attempted to evade him by driving to another part of the lot. The officer then approached Pick-

ens and began to question him about what he was doing. When Pickens could produce no identification, the officer called for a backup unit. After the other unit arrived, the officers handcuffed Pickens and placed him in the backseat of the patrol car so that he could not "take off." The officers received information that he had been arrested a few weeks earlier for forgery but they found no evidence of burglary at the motel. Consequently, they decided to release Pickens. One of the officers found a photo identification of Pickens, another identification card bearing the name Jack Johnson, and a check payable to Jack Johnson. The check was the basis of the forgery case against Pickens. The First Court of Appeals, after holding that Pickens was arrested by virtue of being handcuffed and placed in the patrol car, went on to address whether the arresting officer had reasonable suspicion to initiate the investigatory stop that preceded the arrest. *Pickens*, 712 S.W.2d at 562. The Court concluded that because Pickens' activities were as consistent with innocent behavior as with criminal activity, the investigatory stop was unlawful. *Id.*

■ *Pickens* has been undercut by two recent decisions of the Court of Criminal Appeals. First, in *Woods v. State*, 956 S.W.2d 33 (Tex.Crim.App.1997), the Court abolished the "as consistent with innocent activity as with criminal activity" construct and held that it is no longer a viable test for determining whether a temporary detention is supported by reasonable suspicion. *Woods*, 956 S.W.2d at 38. In reaching this decision, the Court expressly overruled *Pickens* and other cases applying that test. Of more significance to this case, the Court of Criminal Appeals has also held, contrary to *Pickens*, that there is no bright-line test providing that mere handcuffing is always the equivalent of an arrest. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex.Crim.App.1997); *see Zayas v. State*, 972 S.W.2d 779, 789 (Tex. App.—Corpus Christi 1998, pet. ref'd) (questioning the viability of *Pickens* and

similar decisions). Instead, we must evaluate whether the measures undertaken to detain Appellant in the patrol car were unreasonable, or whether they were an acceptable aspect of an investigative detention under the totality of the circumstances. *Zayas,* 972 S.W.2d at 789; *see Rhodes,* 945 S.W.2d at 118. In the context of an investigative detention, an officer may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety. *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Rhodes,* 945 S.W.2d at 117; *Zayas,* 972 S.W.2d at 789. Reasonableness is measured by balancing the nature of the intrusion into an individual's Fourth Amendment interests against the public interest or legitimate government interest at stake. *Zayas,* 972 S.W.2d at 789. The test of reasonableness under the Fourth Amendment is not capable of precise or mechanical definition and it must be judged from the perspective of a reasonable officer at the scene rather than with the advantage of hindsight. *Rhodes,* 945 S.W.2d at 117. Furthermore, allowances must be made for the fact that officers must often make quick decisions under tense, uncertain, and rapidly chancing circumstances. *Id.*

█ Handcuffing is not ordinarily proper, but it may be resorted to in special circumstances, such as when necessary to thwart the suspect's attempt to frustrate further inquiry. *Rhodes,* 945 S.W.2d at 117, *citing* 3 LaFave, *Search and Seizure,* Sec. 9.2(d), 364 (1987). For example, in *Rhodes,* the Court upheld the detention of an automobile passenger as a valid investigative detention rather than an arrest even though the officer handcuffed the passenger because there was evidence showing that the passenger dropped a bag out of the car during the initial chase, the officer was alone with the defendant in the dark and in a high-crime area while his partner chased the driver. *Rhodes,* 945 S.W.2d at 118. Likewise, in *Josey v. State,*

981 S.W.2d 831 (Tex.App.—Houston [14th Dist.] 1998, no pet.), the First Court of Appeals found that an officer's action in removing a passenger from a car, patting him down and handcuffing him did not amount to an arrest because a crowd of five or ten people gathered during the stop, the area was known for narcotic and gang-related activity, and the officers had been threatened by gang members in the area on other occasions. *Josey,* 981 S.W.2d at 839–40.

█ In this case, Breeding testified that he temporarily detained but did not arrest Appellant. The officer's testimony is a factor to be considered along with the facts and circumstances of the detention but it is not controlling. *Rhodes,* 945 S.W.2d at 117; *Amores v. State,* 816 S.W.2d 407, 412 (Tex.Crim.App.1991). The sole reason offered by Breeding for handcuffing Appellant and placing him in the backseat of the patrol car is that the officers did not want anyone to remain in the house while the K–9 searched the residence. He explained that it is simply a procedure that is followed in these types of cases. While that may have explained why Appellant was patted down and removed from the residence, it does not justify the more intrusive measures taken once he was outside. In the absence of any proof in the record to demonstrate the necessity for these actions, what may have been a valid investigative detention at the outset became an arrest unsupported by probable cause.

█ Having reached the same conclusion, the trial judge went on to find that the illegal arrest of Appellant did not require suppression of the cocaine because Appellant had abandoned the property. We disagree. Abandonment of property occurs if the defendant intended to abandon the property and his decision to abandon it was not due to police misconduct. *McDuff v. State,* 939 S.W.2d 607, 616 (Tex. Crim.App.1997); *Brimage v. State,* 918 S.W.2d 466, 507 (Tex.Crim.App.1996); *Comer v. State,* 754 S.W.2d 656, 659 (Tex.

Crim.App.1986). When police take possession of property abandoned independent of police misconduct there is no seizure under the Fourth Amendment. *McDuff,* 939 S.W.2d at 616; *Hawkins v. State,* 758 S.W.2d 255, 257 (Tex.Crim.App.1988). We have already determined that the officers lacked probable cause to arrest Appellant. Because his abandonment of the property in the rear seat of the patrol car was involuntary, the trial court erred in finding that the seizure of the cocaine was not the fruit of the illegal detention and in failing to suppress the evidence.

### *Failure to Pay Supervision Fee*

■ Relying on the rule that a single violation will support a revocation order, the State alternatively argues that the trial court did not abuse its discretion in revoking probation because the court also found that Appellant failed to pay his supervisory fees. Even though the trial court orally found that Appellant failed to pay his supervision fee on two occasions, the court did not include that finding in the written revocation order. Consequently, it will not serve to support the revocation.

### *Conclusion*

Without the unlawfully seized cocaine, there is no evidence to support the trial court's finding that Appellant violated the terms and conditions of probation by illegally possessing cocaine as alleged in the State's motion to revoke. Because there are no other findings to support the revocation order, we necessarily find that the trial court abused its discretion in revoking Appellant's probation. Points of Error Nos. One, Two, and Three are sustained. Accordingly, the judgment revoking probation is reversed and the caused is remanded to the trial court for further proceedings consistent with this opinion.