COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

CHRISTOPHER
PATTEN GILES,                       )                    No. 
08-01-00080-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                        70th District Court

                                                                              )

THE STATE OF TEXAS,                                     )                    of Ector County, Texas

                                                                              )

Appellee.                           )                           (TC# A-27,664)

 

O
P I N I O N

 

Christopher
Patten Giles appeals his convictions for three counts of aggravated robbery
with a deadly weapon, enhanced by a prior felony conviction.  Appellant entered a plea of guilty before a
jury and the trial court conducted a unitary proceeding for the purpose of the
jury assessing punishment.  Appellant
also entered a plea of true to the enhancement paragraph to each count.  After finding Appellant guilty of each count,
the jury found the enhancement paragraph true, and assessed punishment at
imprisonment for a term of twenty-two years. 
By a single point of error, Appellant attacks the trial court=s denial of his motion to suppress
evidence seized during a warrantless search of his
mother=s
home.  We affirm.

FACTUAL SUMMARY








On
August 19, 1999, Sgt. Rick Pippens and Detective Abalos of the Odessa Police Department traveled to Andrews,
Texas to arrest Appellant for three robberies. 
A detective at the Andrews Police Department provided them with an
address where Appellant was believed to live with his mother:  507 Northwest 9th Street.  Other police officers told Pippens that Appellant drove a black Nissan pickup.  They went to the residence but did not find
anyone home.  The officers then paid a
visit to a trailer home where Appellant had recently lived, but they did not
find him there either.  They spoke with
the landlord who told them that the residence had been abandoned by Appellant
and he had removed all of his property from it. 
Consequently, they decided to return to the residence on 9th Street.

As
they approached the house, Pippens saw a black Nissan
pickup driven by Appellant backing out of the driveway.  With their weapons drawn, the officers exited
their vehicle, ordered Appellant out of his truck, and immediately arrested
him.  Appellant=s
wife, Amy Giles, was a passenger in the pickup. 
Pippens explained to Amy why they had arrested
Appellant and told her they were attempting to locate some clothing Appellant
had worn during the robberies.  Amy
agreed that they could look for the clothing and she escorted them into the
house.  In response to a question by Pippens, Amy said that the couple lived in the house.  She showed Pippens
the bed on which they slept and pointed out where they kept their
clothing.  Pippens
first found the shoes Appellant had worn during the robberies but he did not
immediately locate the clothes.  Amy then
took Pippens to the laundry room and they looked
through the dirty laundry until they found the pants, dress shirt, and
undershirt Appellant had worn during the robberies.  She gave Pippens
permission to take the clothing and shoes.








Amy
Giles testified that on August 19, 1999, she lived with her mother at 500
Northwest 10th  in
Andrews.  She and Appellant had been
separated for approximately six months. 
Appellant lived in a trailer home on Northwest 12th Street.[1]  Only Appellant=s
mother, Teresa Giles, and her husband resided at 507 Northwest 9th Street.  She did not recall telling Pippens that she and Appellant lived at the house on
Northwest 9th nor did she recall going into the house with the officers.  In fact, she told Pippens
that she lived on Northwest 10th and she could not give them permission to
enter the residence because it was not her home and Appellant=s mother was out of town.  Despite her refusal to give permission, one
of the officers entered anyway.  The
officer later exited with some items of clothing and asked her if they belonged
to Appellant.  Amy replied that she was
not sure because Appellant shared clothing with his brother.

Appellant
testified that he lived with his mother in August of 1999 but he had left some
of his belongings in the trailer on Northwest 11th Street where he had lived
prior to his separation from Amy.  Amy
did not live in the residence on Northwest 9th and Appellant did not consent to
the officers=s
entry into his mother=s
house.








Teresa
Giles also testified on Appellant=s
behalf at the pretrial suppression hearing. 
Appellant was living with her during his separation from Amy.  Teresa=s
husband, Jose Pena, also lived in the home. 
Teresa never locks her home, thus offering easy access to
Appellant.  At the time of Appellant=s arrest, he and Amy had been separated
for approximately two weeks.  Prior to
that, Appellant and Amy had lived in a trailer on Southeast 8th Street.  Although Amy had lived in Teresa=s house for short periods of time, she
was not staying with Appellant in the house at the time of the arrest.  Pena offered conflicting testimony, stating
that although Appellant had lived with them previously, he did not live with
them in August of 1999.  He did often
visit with them and used their shower.  

At
the conclusion of the hearing, the trial court determined that Appellant lacked
standing to contest the search of his mother=s
home.  The court denied the motion to
suppress but made no written findings of fact or conclusions of law.

WARRANTLESS SEARCH

In
his sole point of error, Appellant challenges the trial court=s denial of his motion to
suppress.  Citing Villarreal v. State,
935 S.W.2d 134 (Tex.Crim.App. 1996), Appellant argues
that he has a legitimate expectation of privacy in his mother=s home given that he stored clothes,
slept, and bathed there.  Although
Appellant goes on to argue that the search was constitutionally impermissible,
he does not address the position taken by the State in the trial court that
this was a valid consensual search.

Standard of Review

A
trial court=s ruling
on a motion to suppress is generally reviewed for an abuse of discretion. Villarreal, 935 S.W.2d at 138; Gordon v. State, 4
S.W.3d 32, 35 (Tex.App.‑-El Paso 1999, no
pet.).   The reviewing court must
give almost total deference to the trial court's determination of historical
facts.  Guzman v.
State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997); Gordon,
4 S.W.3d at 35.  The trial court=s conclusions of law and the
application of those principles to the facts of the case are reviewed de
novo.  State v.
Ross, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000).  Because the trial court made no explicit
findings of historical facts, the evidence must be viewed in a light most
favorable to the trial court=s
ruling.  Carmouche v. State,
10 S.W.3d 323, 327 (Tex.Crim.App. 2000).
Moreover, the trial court=s
ruling should be upheld if it is correct on any theory of law applicable to the
case.  Ross, 32
S.W.3d at 855‑56.








Standing

A
defendant has standing to challenge the admission of evidence obtained by a
governmental intrusion only if he had a legitimate expectation of privacy in
the place invaded.  Rakas v. Illinois,
439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387
(1978); Villarreal, 935 S.W.2d at 138.  Furthermore, the defendant, because he has
greater access to the relevant evidence, has the burden of proving facts
establishing a legitimate expectation of privacy.  Villarreal, 935
S.W.2d at 138.  To carry this
burden, the defendant must prove that (1) by his conduct, he exhibited an
actual subjective expectation of privacy, namely, a genuine intention to
preserve something as private and (2) circumstances existed under which society
was prepared to recognize his subjective expectation as objectively
reasonable.  Smith
v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577,
2580, 61 L.Ed.2d 220 (1979); Villarreal, 935 S.W.2d at 138.  Several factors are relevant to determining
whether a given claim of privacy is objectively reasonable:  (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he
was legitimately in the place invaded; (3) whether he had complete dominion or
control and the right to exclude others; (4) whether, prior to the intrusion,
he took normal precautions customarily taken by those seeking privacy; (5)
whether he put the place to some private use; and (6) whether his claim of
privacy is consistent with historical notions of privacy.  Granados v. State,
85 S.W.3d 217, 223 (Tex.Crim.App. 2002); Villarreal,
935 S.W.2d at 138.  This list of
factors is not exhaustive, however, and none is dispositive
of a particular assertion of privacy; rather, we examine the circumstances
surrounding the search in their totality. 
Granados, 85 S.W.3d at 223; Villarreal,
935 S.W.2d at 138-39.








The
evidence presented to the trial court could not be more contradictory if it had
been strategically and painstakingly planned with that goal in mind.  Our task is made somewhat easier, however,
because we are instructed to take the evidence in the light most favorable to
the trial court=s
ruling.  It is undisputed that Appellant
did not have a property or possessory interest in his
mother=s
house.  He was apparently free to stay
there in the same manner as an extended overnight guest, but he did not Alive there@
as that phrase is commonly understood. 
It is well accepted by our society that an overnight guest has a
legitimate expectation of privacy in the premises.  See Minnesota v. Olson, 495 U.S. 91,
99, 110 S.Ct. 1684, 1689, 109 L.Ed.2d 85 (1990); Granados,
85 S.W.3d at 223.  Therefore, it does not
matter that Appellant actually lived elsewhere. 
See Rakas, 439 U.S. at 141-42, 99 S.Ct. at 429-30 (noting that the court had previously held
that a person can have a legally sufficient interest in a place other than his
own home so that the Fourth Amendment protects him from unreasonable
governmental intrusion).  Appellant was
legitimately in the place invaded and he had unrestricted access to various
portions of the home such as the place where he slept and kept his clothes, the
bathroom, and the laundry room.  He also
had his mother=s
permission to come and go from the premises as necessary.  Even when taken in the light most favorable
to the trial court=s ruling,
the evidence does not support a conclusion that Appellant did not have a
legitimate expectation of privacy in the premises.  On these facts, we thus agree with Appellant=s classic characterization that Ahome is where we leave our dirty
clothes and underwear.@  Because Appellant possessed standing to
challenge the search, 
the denial of the motion to suppress cannot be upheld on this
ground.  This does not end our inquiry,
however, because the State also argued in the trial court that the search was a
valid consensual search.

Consensual Search








During
the suppression hearing, the trial court and the parties focused almost
exclusively on the standing issue and the trial court stated at the hearing=s conclusion that Appellant lacked
standing to object to the search.  The
trial court=s
reasoning is irrelevant, however, so long as any theory articulated by the
State supports the legality of the search. 
Brimage v. State, 918 S.W.2d 466, 479 (Tex.Crim.App.
1996).  The State plainly relied
on Amy Giles= consent
to justify the warrantless search.[2]  Therefore, we will consider whether this
theory supports the trial court=s
denial of the motion to suppress.

Both the Fourth Amendment to the United States Constitution as well
as Article I, Section 9 of the Texas Constitution forbid unreasonable searches
and seizures.  Brimage,
918 S.W.2d at 500. 
Warrantless searches are per se unreasonable
unless they fall under one of a few exceptions. 
Brimage, 918 S.W.2d
at 500.  One of the specifically
established exceptions to the requirements of both a warrant and probable cause
is a search that is conducted pursuant to consent.  Schneckloth v. Bustamonte, 412 U.S. 218, 219,
93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); Riordan
v. State, 905 S.W.2d 765, 770 (Tex.App.--Austin
1995, no pet.).  When relying upon
consent to justify the lawfulness of a search, a prosecutor has the burden to
prove by clear and convincing evidence that the consent was freely and
voluntarily given.  Riordan,
905 S.W.2d at 770, citing Bumper v. North Carolina, 391 U.S. 543, 548,
88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968).  Appellant did not assert in the trial court
that Amy=s consent
was involuntary; instead, he offered evidence that she did not consent at all
and that the officers simply entered the residence illegally without
consent.  Taken in the light most
favorable to the ruling, the evidence showed that Amy voluntarily consented to a
search of the residence.








In
Texas, a person with common authority over property may consent to a search of
the property.  See United States v.
Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39
L.Ed.2d 242, 249‑50 (1974); Patrick v. State, 906 S.W.2d 481, 490
(Tex.Crim.App. 1995), cert. denied, 517 U.S.
1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996).  ACommon
authority@ is the
mutual use of the property by persons generally having joint access or control
for most purposes.  Patrick,
906 S.W.2d at 490, citing Illinois v. Rodriguez, 497 U.S. 177, 179, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148, 156 (1990).  It has been said that Aany
of the co‑inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that
one of their number might permit the common area to be searched.@ 
Matlock, 415 U.S. at 171 n.7, 94 S.Ct.
at 993 n.7, 39 L.Ed.2d at 250 n.7; see also Powers v. State, 459 S.W.2d
847, 849 (Tex.Crim.App. 1970)(where two persons have
equal rights to the use or occupancy of the premises, either may consent to a
search, and the evidence thus disclosed can be used against either).  Amy told Sgt. Pippens
that she lived in the residence with Appellant. 
Excluding the contrary evidence from our consideration, as we must, her
statements support a conclusion that she had common authority over the property
and the right to consent to a search. 
Therefore, the trial court=s
denial of the motion to suppress is not an abuse of discretion.








The
trial court=s ruling
can be upheld on a second and related theory. 
Even if we take into consideration the evidence showing that Amy did not
live in the residence with Appellant, and therefore did not have actual
authority to consent, the search is reasonable under the Aapparent authority@ doctrine as articulated by the Supreme
Court in Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990).  In Rodriguez, the Supreme Court held
that a warrantless entry by law enforcement officers
onto a person=s
premises does not violate the proscription of unreasonable searches and
seizures under the Fourth Amendment, when such entry is based upon the consent
of a third party whom the officers, at the time of the entry, reasonably
believe to possess common authority over the premises, but who in fact does not
possess such authority.  Rodriguez,
497 U.S. at 182-86, 110 S.Ct. at 2798-2800; Riordan,
905 S.W.2d at 771. 
If the officers reasonably believed that the third party had common
authority over the place to be searched, then their good faith mistake will not
invalidate the search.  Rodriguez,
497 U.S. at 182-86, 110 S.Ct. at 2798-2800; Riordan,
905 S.W.2d at 771. 
This does not mean, however, that they may rely upon consent given in
ambiguous circumstances or that clearly appears unreasonable.  Rodriguez, 497 U.S. at 188, 110 S.Ct. at 2801; Riordan, 905 S.W.2d
at 771.

Amy
told the officers that she lived in the residence with Appellant and she agreed
to allow them to look for the clothes used in the robberies.  She led them into the residence and showed
them the bed where she and Appellant slept and showed them their clothes.  She showed them Appellant=s shoes and then assisted them in
searching through the dirty laundry.  All
of this would lead a reasonable person to believe that she truly did live in
the residence and had common authority over the place searched.  Therefore, the trial court could have
reasonably found that the officers relied in good faith on Amy=s apparent authority to consent to a
search of the premises.  For all of these
reasons, we overrule Appellant=s
sole point of error and affirm the judgment of the trial court.

 

 

January 9, 2003

                                                                       


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 5

McClure, Chew, JJ.,
and Preslar, C.J. (Ret.)

Preslar,
C.J. (Ret.)(sitting by assignment)

 

(Do Not Publish)

 











[1]  Appellant and
the other defense witnesses refer to the trailer in which Appellant lived as
being located on 12th, 11th, and 8th Streets. 
It is not clear from the record which is the correct address.  Therefore, we will simply recite the address
as provided by the witness.





[2]  The State
expressly raised this argument in a letter brief filed with the trial court and
it offered evidence at the suppression hearing in support of this theory.