COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JOE MORENO YBARRA,                                   )

                                                                              )              
No.  08-00-00537-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
112th District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of Pecos County, Texas

Appellee.                           )

                                                                              )                       (TC# 2164)

                                                                              )

 

 

O P I N I O N

 

Appellant Joe
Moreno Ybarra was charged with aggravated sexual assault of a child and
indecency with a child.  A jury found
Appellant not guilty of aggravated sexual assault, but guilty of indecency with
a child and assessed punishment at 15 years=
imprisonment.  Appellant raises two
issues on appeal:  (1) whether the trial
court abused its discretion in failing to grant Appellant=s motion to suppress Appellant=s videotaped statement because it was
not voluntarily and knowingly given; and (2) whether the trial court erred in
denying Appellant=s motion
for directed verdict because the State failed to prove venue, which rendered
the State=s case
legally insufficient to support a finding of guilt.  We affirm.








On Thanksgiving
1998, A.N.Y. spent the night at the house of her grandfather, the
Appellant.  During the first week of
December 1998, A.N.Y. again spent the night at Appellant=s
house.  A.N.Y.=s
mother picked her up the next day and noticed that A.N.Y. was shaking and asked
her what was wrong.  Later that day
A.N.Y. told her mother that on Thanksgiving while she slept at Appellant=s house on a couch in the living room,
she woke up in the middle of the night in a lot of pain and found that
Appellant=s hands
were inside her panties in between her legs. 
At trial, the State also introduced into evidence testimony as to other
incidents of alleged contact between Appellant and A.N.Y.

Motion
to Suppress 

In Issue One,
Appellant asserts that the trial court erred in denying his pretrial motion to
suppress his videotaped statement. 
Appellant claims that he was in custody when he gave his videotaped
statement and that it was involuntary because officers made a number of
promises and representations to Appellant in order to induce him into making
the statement.








A trial court=s ruling on a motion to suppress is
generally reviewed for an abuse of discretion. 
Villarreal v. State, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996); Gordon
v. State, 4 S.W.3d 32, 35 (Tex.App.‑‑El Paso 1999, no
pet.).  Under this standard, the
reviewing court must give almost total deference to the trial court=s determination of historical facts,
especially when the court=s
findings are based on an evaluation of credibility and demeanor.  Guzman v. State, 955 S.W.2d 85, 89
(Tex.Crim.App. 1997); Gordon, 4 S.W.3d at 35.  Where the trial court has made no explicit
findings of historical facts, as in this case, we must view the evidence in a
light most favorable to the trial court=s
ruling.  See Carmouche v. State,
10 S.W.3d 323, 327 (Tex.Crim.App. 2000). 
On a motion to suppress evidence, the trial judge is the sole trier of
fact and judge of the credibility of the witnesses, including what weight, if
any, is to be given to their testimony.  See
Bradley v. State, 960 S.W.2d 791, 800 (Tex.App.‑‑El Paso 1997,
pet. ref=d).  Consequently, the trial court may choose to
believe or disbelieve any or all of a witness=s
testimony.  See Villarreal, 935
S.W.2d at 138.  We review de novo
the trial court=s
conclusions of law and the application of those principles to the facts which
do not turn on an evaluation of credibility and demeanor.  State v. Ross, 32 S.W.3d 853, 856
(Tex.Crim.App. 2000); Guzman, 955 S.W.2d at 89. 

Was
Appellant in Custody?

The State contends
that Miranda and Article 38.22 of the Texas Code of Criminal Procedure
do not apply to the videotaped statements made by Appellant during the
interview because they did not stem from custodial interrogation.  Whether Appellant=s
statements were voluntary is only an issue if the information was the result of
custodial interrogation.  Rodriguez v.
State, 939 S.W.2d 211, 215 (Tex.App.‑‑Austin 1997, no pet.); Morris
v. State, 897 S.W.2d 528, 531 (Tex.App.‑‑El Paso 1995, no
pet.); Holland v. State, 770 S.W.2d 56, 58 (Tex.App.‑‑Austin
1989), aff=d,
802 S.W.2d 696 (Tex.Crim.App. 1991).  If
Appellant=s
videotaped statements do not stem from custodial interrogation, neither
Miranda nor Article 38.22 require their suppression.  See Tex.Code
Crim.Proc.Ann. art. 38.22, '
5 (Vernon 1979) (expressly excluding statements occurring outside of custodial
interrogations).  Thus, we must determine
whether Appellant was in custody at the time he made the videotaped statement.








Whether a
statement is the product of custodial interrogation must be determined on an
ad hoc basis after considering all of the objective, as opposed to
subjective, facts and circumstances.  Dowthitt
v. State, 931 S.W.2d 244, 255 (Tex.Crim.App. 1996).  In Miranda, the United States Supreme
Court defined Acustodial
interrogation@ as Aquestioning initiated by law
enforcement officers after a person has been taken into custody or otherwise
deprived of his freedom of action in any significant way.@ 
Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16
L.Ed.2d 694, 706 (1966).  A person is Ain custody@
if, under the circumstances, a reasonable person would believe his freedom of
movement was restrained to the degree associated with a formal arrest.  Stansbury v. California, 511 U.S. 318,
322‑24, 114 S.Ct. 1526, 1528-30, 128 L.Ed.2d 293, 298-99 (1994); Dowthitt,
931 S.W.2d at 254.  The reasonable person
standard presupposes an innocent person. 
Florida v. Bostick, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115
L.Ed.2d 389 (1991); Dowthitt, 931 S.W.2d at 254. 

When a person is
transported to a law enforcement facility by an officer in the course of an
investigation, if the person was acting upon the invitation, request, or even
the urging of an officer and there were no threats that he would be taken in a
forcible manner, and the accompaniment is voluntary, then the individual is not
in custody.  Anderson v. State,
932 S.W.2d 502, 505 (Tex.Crim.App. 1996); Bradley, 960 S.W.2d at
801.  Stationhouse questioning does not,
in and of itself, constitute custody.  California
v. Beheler, 463 U.S. 1121, 1124‑25, 103 S.Ct. 3517, 3519-20, 77
L.Ed.2d 1275 (1983); Dowthitt, 931 S.W.2d at 255.  However, police conduct during the encounter
may cause a consensual inquiry to escalate into custodial interrogation.  Ussery v. State, 651 S.W.2d 767, 770
(Tex.Crim.App. 1983); Bradley, 960 S.W.2d at 801.








At the suppression
hearing, the State called two witnesses, Deputy Sheriffs Larry Jackson and
Arvin West.  Deputy West testified that
he made contact with Appellant at his place of employment, the Comfort Inn
Motel in Fort Stockton, at approximately 9 or 9:15 in the morning on December
9, 1998.  Deputy West was in full uniform
and identified himself as a police officer. 
Deputy West informed Appellant that some allegations had been made and
Appellant indicated that he knew what Deputy West was there for and would
gladly go with him.  Deputy West asked
Appellant if he would accompany him back to the Pecos County Sheriff=s Office and Appellant told him A[s]ure. 
No problem.@  Deputy West testified that at that stage of
the investigation, he did not intend to arrest Appellant.  Deputy West did not handcuff Appellant and if
Appellant had not consented, he would not have arrested him.

When they arrived,
Deputy West took Appellant to his office and immediately informed Appellant
again what they were there for and advised Appellant of his Miranda
rights.  Deputy West stated that he read
the Miranda warnings to Appellant, then had Appellant read the written
copy of his Miranda rights. 
Appellant initialed each of the warnings on the written copy.  Deputy Jackson was present momentarily while
Deputy West advised Appellant of his rights, but left the room shortly
thereafter.  By 9:35 a.m., Deputy West
began interviewing Appellant and during the course of obtaining Appellant=s written statement it became obvious
to Deputy West that Appellant was blurting out information and incriminating
himself.  Deputy West determined that it
would be better to make a video statement and asked Appellant if he was willing
to give one and Appellant agreed.  Deputy
West then contacted Deputy Jackson at around 11:30 a.m.  With both officers present, Appellant was advised
of his Miranda rights again and signed another written form, which
advised him that a video statement was going to be taken.








For the purposes
of the hearing, the State introduced Appellant=s
videotaped statement into evidence.  On
the videotaped statement, Deputy Jackson states that the interview with
Appellant is being conducted at 12:15 p.m. at the Pecos County Sheriff=s Office in Fort Stockton, Texas and
will be about a sexual assault of a child that occurred on Thanksgiving.  Deputy Jackson and Appellant went over the
written copy of his Miranda rights again.  As Deputy Jackson read each right, Appellant
confirmed that it was his initials beside each of the rights.  Appellant also confirmed that it was his
signature beside a statement which read, AI
have read the above rights and I understand each of these rights.  And having all these rights in mind, I waive
these rights and am willing to make a video statement for Deputy Larry Jackson.@ 
Deputy Jackson then informed Appellant that he was not under arrest at
this time and that he was free to leave if he wanted to do so.  Appellant affirmed that he understood this
information.  Deputy Jackson stated that
he had explained to Appellant that he could and may be arrested later on for
what he was about to say on the tape. 
Appellant confirmed that Deputy Jackson had told him that he would not
be arrested today, but could be arrested later. 
On tape, Appellant confirmed that he had not been mistreated by any
member of the sheriff=s
department, had not been denied any bathroom privileges, and had not been denied
water, food, coffee, or anything he wanted.








During the course
of the videotaped interview, Appellant told the officers his version of what
happened on Thanksgiving between him and his eight-year-old granddaughter
A.N.Y.  Appellant explained that A.N.Y.
was sleeping on the couch and he was sleeping on the floor between A.N.Y. and
another granddaughter, who was sleeping on another couch, in the living room of
Appellant=s
house.  A.N.Y. was sleeping in a T-shirt
and panties.  A.N.Y. usually had a rough
night sleeping, taking her blankets and covers off and walking all over the
bed.  On that night, Appellant had to
cover her up several times.  Appellant
stated that while covering her up, his hand briefly touched the top of A.N.Y.=s panties.  Appellant denied putting his hand underneath
her panties.  Appellant stated that it
had never happened before and that he did not know why it had happened.  Appellant also stated that he could not
explain why it happened, but that he felt so bad about it.  On the videotape, Appellant also admitted
that on a different occasion he got on top of A.N.Y. while she was laying on
her belly watching television.  According
to Appellant, they were just playing around.

Deputy West
testified that during the encounter, Appellant was never deprived of any food
or restroom privileges and was never threatened with arrest or harassment.  Deputy West stated that during the entire
questioning, Appellant was not under arrest. 
On cross-examination, Deputy West admitted that he advised Appellant of
the possibilities of punishment.  He
recalled that he told Appellant there was a possibility that he could get
probation and a possibility that he could go to the penitentiary.  Deputy West stated that it is his policy to
tell anybody who asks about length of punishment to say that it is up to the
district attorney.  Deputy West told Appellant
that the videotape statement would be submitted to the district attorney=s office.  Deputy West also testified that he was not
aware of Appellant having any problems with his eyesight.  After the interview, Deputy West took
Appellant back to the motel and told him the possibility existed that there
would be a warrant issued for his arrest at a later date, depending on how the
district attorney wanted to handle the case.








Appellant
testified on his own behalf at the suppression hearing.  According to Appellant, on the morning of
December 9, 1998, he was working at the Comfort Inn in Fort Stockton doing
maintenance outside.  He was approached
by an officer, Deputy West.  Appellant
knew he was a deputy because of the way he was dressed and because he had a
badge on and a gun.  Appellant testified
that Deputy West did not tell him right away why he was there.  Rather, Deputy West told Appellant that he
needed to talk to Appellant and asked if they could go outside for a minute.  When they got outside, Deputy West said A[w]e are going to have to go to the
office, to the sheriff=s
office.@  Appellant replied that he needed to clock out
first and went back inside to clock out. 
Appellant testified that he felt like he had to go with Deputy
West.  Deputy West then transported
Appellant to the sheriff=s
office in a police car.

At the sheriff=s office, Deputy West mentioned to
Appellant the allegations against him and said A[w]e
need to discuss this.  We need to talk
about what happened.@  Appellant thought Deputy West was talking
about the time his granddaughter stayed with him in December.  Appellant gave a written statement about that
December visit as soon as he got to the sheriff=s
office.  According to Appellant, he and
Deputy West walked over to Deputy Jackson=s
office.  When they walked in, Deputy
Jackson began asking Appellant why he did it. 
When Appellant denied doing anything, Deputy Jackson stated that they
knew he did it and that they were going to have to make a tape.  Appellant testified that he was told that if
they made this statement, nobody would know that he was arrested.  Appellant also testified that Deputy Jackson
told him that he was going to talk to the judge and make bail real low, that
Appellant was not going to do any time in the pen, and the most he would get is
about three years=
probation.








As to the Miranda
warnings, Appellant stated that he could not read the papers he had
initialed.  According to Appellant, he
told the officer that he could not read it and the officer said he would help
him.  The officer read him his Miranda
rights, but after the first part of it the officer garbled his words.  Appellant testified, however, that he more or
less understood what his rights were at that time.  When defense counsel asked Appellant if he
felt like you could leave at any time, Appellant stated that he did not because
he had agreed to make the tape and Deputy Jackson had agreed to all those
things that he said before and had told him that the tape was only going to be
used for MHMR [Mental Health, Mental Retardation] purposes.  However, Appellant also testified that he did
not feel like he was under arrest at the time. 
After making the tape, Deputy West took Appellant back to the Comfort
Inn and mentioned to Appellant that he would probably be arrested the next day
or the day after.

On
cross-examination, Deputy Jackson denied telling Appellant that the videotape
was going to be used only by MHMR and denied making Appellant any promises or
telling him that he would probably only get probation.  Deputy Jackson denied telling Appellant that
if he did not speak to him today about the incident, he was going to arrest
Appellant that day.  He also denied
knowing whether or not Appellant was hard of hearing or that he wore
eyeglasses.

The Court of
Criminal Appeals has identified four general situations which may constitute custody:  (1) when the suspect is physically deprived
of his freedom of action in a significant way; (2) when a law enforcement
official tells a suspect he cannot leave; (3) when law enforcement officials
create a situation that would lead a reasonable person to believe that his
freedom of movement has been significantly restricted; and (4) if there is
probable cause to arrest and law enforcement officials do not tell the suspect
that he may leave.  Dowthitt, 931
S.W.2d at 255, citing Shiflet v. State, 732 S.W.2d 622, 629
(Tex.Crim.App. 1985).  In situations one
through three, the restraint on freedom must be that associated with an arrest
and not simply an investigative detention, and in situation four, the officer=s knowledge of probable cause must be
manifested to the suspect, and such manifestation, considered in the totality
of the circumstances, would lead a reasonable person to believe he is not free
to leave.  See id. at 255.








In this case,
Appellant was asked to accompany Deputy West to the sheriff=s office for the purpose of discussing
the allegations his granddaughter had made against him.  Appellant voluntarily consented to going to
the sheriff=s
office.  There is no evidence that
indicates Appellant was physically deprived of his freedom of action in any
significant way.  He was not handcuffed,
deprived of food, water, or restroom privileges while at the sheriff=s office nor was he told that he was
not free to leave.  On videotape, the
officers informed Appellant that he was not under arrest and that he was free
to leave.  They also testified to the
same at the hearing.  Further, Appellant
testified that at the time he did not feel like he was under arrest.

Examining
objectively the circumstances surrounding Appellant=s
videotaped statement, we cannot conclude that a reasonable person in Appellant=s position would have believed that his
freedom of movement had been restrained to the degree associated with a formal
arrest.  While Appellant offered
conflicting testimony as to the officers communicating to him that Athey knew he did it,@ the trial court as sole trier of fact
and judge of the credibility of the witnesses may choose to believe or
disbelieve any or all of a witness=s
testimony.  See Bradley, 960
S.W.2d at 800.  Since Appellant was not
in custody, the Miranda warning requirements under Article 38.22 were
not triggered.  Accordingly, we find no
error in the trial court=s
admission of his videotape statement. 
Issue One is overruled.  

Venue

In Issue Two,
Appellant contends that the trial court erred in denying Appellant=s motion for instructed verdict on the
issue of venue at the close of the State=s
case-in-chief.  The indictment alleged
that Appellant committed aggravated sexual assault of a child and indecency
with a child in Pecos County, Texas. 
Appellant asserts that the State failed to establish during its
case-in-chief that the offense for which Appellant was convicted did, in fact,
occur in Pecos County.  Therefore,
Appellant contends the State failed to prove venue, rendering the State=s case legally insufficient to support
a finding of guilt.








Failure to prove
venue in the county of prosecution is reversible error.  See Black v. State, 645 S.W.2d 789,
791 (Tex.Crim.App. 1983).  However, venue
is presumed to have been proven in the trial court unless the record
affirmatively shows otherwise or venue is made an issue at trial.  See Tex.R.App.P.
44.2(c)(1); Clark v. State, 558 S.W.2d 887, 891 (Tex.Crim.App. 1977); Valdez
v. State, 993 S.W.2d 346, 349 (Tex.App.--El Paso 1999, pet. ref=d). 
A motion for an instructed verdict expressly challenging proof of venue
timely raises and preserves the issue for appeal.  Black, 645 S.W.2d at 792-93; Valdez,
993 S.W.2d at 349.  

Venue is a
noncriminative fact that the State must establish by a preponderance of the
evidence.  See Tex.Code Crim.Proc.Ann. art. 13.17
(Vernon 1977); Black, 645 S.W.2d at 790; Fairfield v. State, 610
S.W.2d 771, 779 (Tex.Crim.App. 1981). 
Proof of venue may be established by direct or circumstantial
evidence.  Black, 645 S.W.2d at
790.  The trier of fact may make
reasonable inferences from the evidence to decide the issue of venue.  Valdez, 993 S.W.2d at 349; Lozano
v. State, 958 S.W.2d 925, 929 (Tex.App.--El Paso 1997, no pet.).  Evidence is sufficient to establish venue if Afrom the evidence the jury may
reasonably conclude that the offense was committed in the county alleged.@ Rippee v. State, 384 S.W.2d
717, 718 (Tex.Crim.App. 1964).








In this case, no
one directly testified that the offense took place in Pecos County, Texas.  At trial, A.N.Y.=s
mother testified that in 1998, A.N.Y. spent the night at Appellant=s house on Thanksgiving and on the day
after Thanksgiving.  On Thanksgiving,
A.N.Y. stayed overnight at the house without her parents, but on the following
day, her father also stayed over at Appellant=s
house.  During the following week, from
Friday, December 4 to Saturday, December 5, A.N.Y. again spent the night at her
grandparents=
house.  On that occasion, Mrs. Ybarra and
her husband went to Fort Stockton and left A.N.Y. and their other daughter at
Appellant=s house,
so that they could go out while Appellant acted as their babysitter.  Mrs. Ybarra picked up her daughters from
Appellant=s house
the next day.  Mrs. Ybarra testified that
when they got in the car, A.N.Y. told her Alet=s go, let=s
go.@ 
She looked at A.N.Y. and saw that A.N.Y. had her arms stretched out and
was shaking.  They drove back to their
home in Kermit, Texas and later on that day, A.N.Y. confided to her mother that
on Thanksgiving day when she slept there alone with her cousins, she woke up in
a lot of pain and her grandfather=s
hands were inside her panties in between her legs.  A.N.Y.=s
mother also testified that Appellant was living in a trailer house in the Quail
Run area by the cemetery.

A.N.Y., the
victim, testified that Appellant is her paternal grandfather and that she spent
the night over at Appellant=s
house around Thanksgiving time.  She
slept in the living on the couch, her cousin slept on the other couch, and
Appellant slept right beside her on the floor. 
During the middle of the night, A.N.Y. woke up with pain in her private
parts and found Appellant=s
hands inside her panties.  A.N.Y. also
testified that she went back again and spent the night at her grandparents= house on that day in December.

The record also
reflects that the State introduced Appellant=s
voluntary written statement into evidence during its case-in-chief.  In this statement, Appellant wrote, AI now live at P.O. Box 805 Ft Stockton,
TX.@ 
The State also introduced Appellant=s
videotaped statement into evidence and it was played to the jury.  At the start of the tape, Deputy Jackson
states, A[t]his
will be a taped interview that=s
being held at the Pecos County Sheriff=s
Office in Pecos County, Texas, in Ft. Stockton, Texas.@








It may be
reasonably inferred from circumstantial evidence in this case that the charged
offense occurred in Pecos County. 
Because the evidence showed that the offense took place in Appellant=s home, that Appellant lived in Fort
Stockton, and that Fort Stockton was in Pecos County, the trial court was also
free to take judicial notice that Fort Stockton is a city within Pecos
County.  See Black, 645 S.W.2d at
791; Lozano, 958 S.W.2d at 929. 
Accordingly, we find the trial court did not err in denying the motion
for directed verdict on this matter. 
Issue Two is overruled.

We affirm the
trial court=s
judgment.

 

 

February
27, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.

 

(Do Not Publish)