COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

DANIEL GARCIA MARTINEZ,                          )

                                                                              )               No.  08-01-00463-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
142nd District Court

THE STATE OF TEXAS,                                     )

                                                                              )          
of Midland County, Texas

Appellee.                           )

                                                                              )               
(TC# CRA-22,002)

                                                                              )

 

 

O
P I N I O N

 

Daniel Garcia
Martinez appeals the revocation of his community supervision.  On his guilty plea, Appellant was convicted
of felony DWI.  The trial court sentenced
Appellant to 10 years=
imprisonment, suspended, and placed Appellant on community supervision for a
period of 5 years, which was later extended to 8 years by modification
judgments.  Appellant brings five issues
for review, in which he contends the trial court abused its discretion in
revoking community supervision.  We
affirm.








On March 6, 1997,
Appellant was placed on community supervision with required participation in
the Treatment Alternative Incarceration Program (TAIP).  After a hearing on a State=s motion to revoke community
supervision, the trial court modified the terms and conditions of Appellant=s community supervision on October 8,
1998.  On May 4, 2001, the trial court
again modified the terms and conditions of Appellant=s
community supervision after a hearing on a State=s
motion to revoke community supervision. 
In addition to lengthening the probation period, the judgment ordered
Appellant confined to a Substance Abuse Felony Treatment Facility (SAFTF) for
an indeterminate term of not more than one year or less than ninety days.  Appellant was also to serve up to seventy-five
days jail time as a condition of his community supervision pending transfer to
SAFTF.  On May 16, 2001, the trial court
ordered Appellant to wear an electronic leg monitor as a condition of his
continued community supervision, prior to being ordered to report to the
Midland County Jail.  The order required
Appellant to remain in his Adesignated
residence@ at all
times unless given permission to leave by the probation department or during
the authorized hours specified for his work and treatment schedules.  Appellant was required to wear the electronic
monitoring device at all times and ordered not to tamper, damage, or destroy
the device.

On October 15,
2001, the trial court held a hearing on the State=s
motion for revocation of community supervision, which is the subject of this
appeal.  Appellant pled not true to the
State=s
allegations that he violated the terms and conditions of his probation by
failing to comply with the electronic monitoring program.  At the conclusion of the hearing, the trial
court found that the State had proven its allegations, revoked community
supervision, and sentenced Appellant to six years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice with treatment in a Substance Abuse Therapeutic Treatment Program prior
to release.  After a hearing on Appellant=s motion for new trial, the trial court
denied the motion.  Appellant
now timely appeals.

REVOCATION
OF COMMUNITY SUPERVISION








Appellant raises
five issues in which he contends the trial court abused its discretion in
revoking community supervision because: 
(1) it allowed the State to offer into evidence the community
supervision department=s
rules and regulations, which differed from the court=s
order; (2) the court=s
order was ambiguous with respect to the technological requirements of the
electronic monitoring equipment used by the department; (3) there was newly
discovered evidence that the electronic monitor was susceptible to electronic
interference; (4) as a jailed probationer, Appellant could not pay the
monitoring fees when they became due; and (5) Appellant offered contrary
evidence as to the alleged tampering with the electronic monitoring device.

Standard
of Review








Our review of a
community supervision revocation proceeding is limited to a determination of
whether the trial court abused its discretion. 
Jackson v. State, 645 S.W.2d 303, 305 (Tex.Crim.App. 1983). 
In a community supervision revocation proceeding, the State bears the
burden to establish the alleged violations of the trial court=s order by a preponderance of the
evidence.  Cobb v.
State, 851 S.W.2d 871, 873 (Tex.Crim.App. 1993); Becker
v. State, 33 S.W.3d 64, 66 (Tex.App.--El Paso
2000, no pet.).  That burden is
met when the greater weight of the evidence before the court creates a
reasonable belief that the defendant violated a condition of community
supervision.  Taylor
v. State, 604 S.W.2d 175, 179 (Tex.Crim.App.
[Panel Op.] 1980); Williams v. State, 910 S.W.2d 83,
85 (Tex.App.--El Paso 1995, no pet.).  In determining whether the allegations in the
revocation motion are true, the trial court is the sole trier
of facts, the credibility of the witnesses, and the weight to be given the
testimony.  Taylor, 604 S.W.2d at 179; Becker, 33 S.W.3d at 66.  This Court must view the evidence presented
at the revocation proceeding in a light most favorable to the trial court=s ruling.  Garrett v. State,
619 S.W.2d 172, 174 (Tex.Crim.App. [Panel Op.]
1981).  

When the State has
sustained its burden of proving the allegation by a preponderance of the
evidence and no procedural obstacle is raised, the decision whether to revoke
probation is within the discretion of the trial court.  Flournoy v. State, 589 S.W.2d 705, 708 (Tex.Crim.App.
[Panel Op.] 1979); Gordon v. State, 4 S.W.3d 32, 35 (Tex.App.--El Paso 1999, no pet.).  Under such circumstances, the trial court=s discretion is substantially
absolute.  Flournoy,
589 S.W.2d at 708; Gordon, 4 S.W.3d at 35.  If a single ground for revocation is
supported by a preponderance of the evidence and is otherwise valid, then an
abuse of discretion is not shown.  Sanchez v. State, 603 S.W.2d 869, 871 (Tex.Crim.App.
[Panel Op.] 1980); Gordon, 4 S.W.3d at 35.

Evidence
at Revocation Hearing

At the revocation
hearing, the State called Ramona Sam, the supervisor of the electronic
monitoring programs for the Midland County Community Supervision and
Corrections Department, as a witness. 
Ms. Sam explained that when a probationer is released on an electronic
monitor, an officer takes a monitoring unit to the probationer=s home and connects it to a phone
line.  The officer reviews the rules and
regulations of the program with the probationer, including informing him that
he is not allowed to leave without authorized consent nor can he stray more
than fifty feet from the unit. 
Probationers are also told their payment obligations for the equipment
and are given a pager number to call if they experience any equipment or phone
problems.  Through Ms. Sam, the State
introduced into evidence the acknowledgment form signed by Appellant, which
states the rules and regulations of the electronic monitoring program.








Ms. Sam explained
that if a probationer goes beyond a fifty foot perimeter, the monitoring unit
dials a pager number and records the events as an unauthorized leave.  When the probationer comes back into range,
the monitoring unit records the event as an unauthorized return.  Leaving and returning outside the window of a
probationer=s
pre-approved schedule triggers the unit to record the event as
unauthorized.  There is a log connected
to the system that records all activity. 
The monitoring log for Appellant indicated that unauthorized leave and
return occurred on the following dates in 2001: 
May 14, May 16, May 28, and May 30.

Ms. Sam was the
back-up probation officer who checked on the monitor signals on
May 30.  On that morning, the unit
recorded an unauthorized leave at 10:59 a.m. 
Ms. Sam waited until the system recorded the unauthorized return at
11:24 a.m. and then called the residence. 
Ms. Sam spoke with Appellant, who explained that he was at the residence
but outside in the back alley beyond the fifty feet range.  Ms. Sam received a second unauthorized leave
and return that day.  She called
Appellant=s
residence, but received no answer.








Jacinto Alcocer, a field officer for the Midland probation
department, supervised Appellant in the electronic monitoring program for most
of June 2001.  Appellant was fitted with
an electronic monitor leg strap.  On June
2, 2001, Officer Alcocer received a transmission on
his pager from the on-call officer, alerting him that there was an open band,
that is, the leg strap holding the monitor on Appellant=s
person had been undone.  Whenever the
band has been opened, it shows Atamper
transmitter@ on the
page.  In response to this alert at 10:14
a.m., Officer Alcocer went by Appellant=s house.  Officer Alcocer arrived
at 11 a.m., and Appellant returned home seventeen minutes later.  Officer Alcocer saw
that Appellant had the transmitter on. 
Upon closer inspection, Officer Alcocer
discovered that the transmitter had been cut off and taped back on.  Officer Alcocer
took the cut band back and replaced it with a new one.  The cut band was placed into evidence at the
hearing.

On June 4, 2001,
Officer Alcocer received an unauthorized leave signal
at 1:32 p.m. and an unauthorized return at 2:02 p.m.  Officer Alcocer
called Appellant=s
residence afterwards and spoke with Appellant. 
On June 8, Officer Alcocer received
unauthorized leave and return signals and afterwards
called the residence and spoke with Appellant. 
There were similar unauthorized leave and return signals on June 10 and
June 11.[1]  On June 13, 2001, there were two incidents of
unauthorized leave and return signals. 
On both occasions, Officer Alcocer went to
Appellant=s
residence, but Appellant was not there. 
On June 14, Officer Alcocer went to Appellant=s residence after receiving an
unauthorized leave signal and found that Appellant was not at his
residence.  On June 16, Officer Alcocer went to Appellant=s
residence after receiving an unauthorized signal and again found Appellant was
not at his residence.  There were two
incidents of unauthorized leave and return on June18 and neither time did
Officer Alcocer find Appellant at his residence.  On June 19, Officer Alcocer
twice received unauthorized leave and return signals.  During each period of unauthorized leave,
Officer Alcocer called Appellant=s residence.  In the first incident, Officer Alcocer called the residence, but was unable to speak to
Appellant.  In the second, there was no
answer at Appellant=s
residence.








Trina Peterson,
Appellant=s
probation officer since June 6, 1997, testified that Appellant did not pay any
of his electronic monitoring fees from May 4, 2001 until June 19, 2001, that
being the day he was arrested for violating his electronic monitoring
conditions.  Based on her supervision of
Appellant for several years and her knowledge of him, Ms. Peterson recommended
that Appellant not be continued on community supervision and that he be
sentenced to imprisonment.

Reyes Martinez,
Appellant=s mother,
testified at the revocation hearing in Appellant=s
defense.  Appellant was living with his
parents while on community supervision. 
Mrs. Martinez recalled that Appellant had to wear a bracelet on his ankle.  The family=s
home is out of town on two acres of land and they have goats on a ranch.  From May 14, 2001 to June 19, 2001, Appellant
helped her with the goats and on one occasion the goats escaped and Appellant helped
her gather them back in.  While helping
his mother, Appellant=s
bracelet got caught on barbed wire.  The
barbed wire cut the rubber ankle bracelet, but it was not completely cut
off.  Mrs. Martinez explained that
the rest of the bracelet was cut by accident when she stepped on it.  While Appellant was walking ahead of her from
the kitchen to the dining room, Mrs. Martinez called his name and that is when
she stepped on it and it got cut all the way through.  Mrs. Martinez stated that Officer Alcocer only went to their home once.  When Appellant was gone, he was working out
in the yard with the animals, caring for the yard, or taking his parents to the
doctor.  They keep the goats in a corral
on the ranch, which is about a mile from the house.








In reviewing the
sufficiency of the evidence to support a finding that Appellant violated a
condition of his supervision, we find that the trial court did not abuse its
discretion by revoking Appellant=s
community supervision.  Proof of a single
violation is sufficient to support revocation of community supervision.  O=Neal
v. State, 623 S.W.2d 660, 661 (Tex.Crim.App.
1981).  Here, Officer Alcocer=s testified that on six occasions he
went to Appellant=s
residence after receiving unauthorized leave and return signals and found
Appellant not at his residence.  On June
2, 2001, Officer Alcocer discovered that the
electronic monitor placed on Appellant had been cut off and taped back on.  Mrs. Reyes Martinez offered an explanation as
to how Appellant=s
monitoring ankle bracelet became damaged. 
It is the trial court=s
duty to judge the credibility of the witnesses. 
See Langford v. State, 578 S.W.2d 737, 739
(Tex.Crim.App. 1979). 
The State met its burden of proof in showing that Appellant had violated
at least some of the conditions of his probation.  Therefore, we overrule Appellant=s Issue Five.  Because of our disposition on this issue, we
find it unnecessary to address Appellant=s
remaining issues.

We affirm the
trial court=s
judgment.

 

 

 

July
10, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.

 

(Do Not Publish)











[1]The
State abandoned the alleged violations committed on May 29, 2001 and June 11,
2001, because evidence at the hearing showed that at or near the time of the
unauthorized absence, Appellant was reporting to Trina Peterson, his probation
officer.