COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JESUS SALAS RIVERA,                                     )

a/k/a JESUS SALAS
JIMENEZ-RIVERA,           )

a/k/a JESUS JIMENEZ,                                        )             
No.  08-03-00200-CR

                                                                              )

Appellant,                          )                 Appeal from the

                                                                              )

v.                                                                           )              
238th District Court

                                                                              )

THE STATE OF TEXAS,                                     )         
of Midland County, Texas

                                                                              )

Appellee.                           )               
(TC# CR-27,721)

                                                                              )

 

 

O
P I N I O N

 

This is an appeal
from a conviction for the felony offense of possession of marihuana over four
ounces but under five pounds.  Pursuant
to a plea agreement, the Appellant, Jesus Salas Rivera, pled guilty and was
sentenced 2 years= in the
state jail, suspended for 5 years=
community supervision and a $1,500 fine. 
On appeal, Appellant challenges the trial court=s
denial of his motion to suppress the evidence seized.  We affirm.








At the motion to
suppress hearing, the only testimony presented was that of Officer Mitch
Russell, of the Midland Police Department. 
Officer Russell testified that he has been employed with the Midland
Police Department for twelve years, eight of which he has worked with the
narcotics division.  On September 6,
2000, he and Detective Herman, were conducting a marihuana investigation
involving Marshal Ray Willis.  Both of
them, along with a cooperating individual, negotiated a purchase of marihuana
from Mr. Willis.  Subsequent to taking the
delivery of approximately four pounds of marihuana from Mr. Willis, he agreed
to provide the source of his supply, which turned out to be Jesus Salas Rivera,
the Appellant.  Mr. Willis told Officer
Russell that he had made previous purchases of marihuana from the Appellant,
dating as far back as to about a year and half. 
Mr. Willis further agreed to cooperate and order another quantity of
marijuana from the Appellant.  He
provided Officer Russell with Appellant=s
address, cellular number, and a description of Appellant=s
vehicle, which he described as an off-yellowish van with a sign on it that read
AFirst Class Painting,@ the name of Appellant=s company.

That same day,
Officer Russell placed a recording device on Mr. Willis=s
cell phone.  Mr. Willis placed a
call to Appellant=s
cellular number which sent his call to the voice mail system indicating that
they had reached First Class Painting. 
Mr. Willis left a message for 
Appellant at his place of business, and Appellant returned his call shortly
thereafter.  The following conversation
took place:

C.S.:    Hello

 

Jessie:   Hey.     

 

C.S.:    Hey Jess.

 

Jessie:   . . . inaudible . . .  What=s
up?

 

C.S.:    What=s
up man?

 

Jessie:   Kickin=
it . . . inaudible . . .

 

C.S.:    Uh . . . shit I don=t
know.  Uh . . . can we do something today
or what?

 

Jessie:   Yeah brother, that=s
what I=m telling
you.

 








C.S.:    What do you . . . what do you want?  What do you want to do?  Can you get me five?

 

Jessie:   Well I=ll
go . . . I=ll be
over there in a minute man.  I=ll talk to you.

 

C.S.:    Huh?

 

Jessie:   I=ll
be over there in a minute to talk to you.

 

C.S.:    Well hey can you . . . can you . . . can you
wait a little bit because my mom is getting ready to come home so.

 

Jessie:   Ok, that=s
cool.  That=s
cool.

 

C.S.:    All right.

 

Jessie:   I=ll
. . . I=ll . . .
I=ll give you a holler before I stop by.

 

C.S.:    Ok, bye.

 

Jessie:   All right man.

 

According to Officer Russell=s testimony, the deal had to be
postponed until the following day in order to prepare some things before the
deal.  Mr. Willis therefore made up a
story as to why they could not go through with the deal and it was postponed to
the following day.  

The next day, Mr.
Willis met Detective Herman at the police station and placed another call to
the Appellant.  After several attempts,
Appellant answered the telephone and he and Mr. Willis made small talk
regarding some job that required laying tile. 
Then the following conversation transpired:

C.S.:    So . . . uh . . . what do you want to do
dude?

 

Jessie:   Same thing as yesterday we was talking about?

 

C.S.:    Yeah.

 

Jessie:   Ok. 
Well I=ll . . .
I=ll be over there man.

 








C.S.:    Well you gonna go by my house or what?

 

Jessie:   Yeah.

 

C.S.:    All right.

 

Jessie:   Yeah. 
I=ll be by
there.

 

C.S.:    Hey.

 

Jessie:   Huh?

 

C.S.:    Jess, you don=t
think we can go somewhere else?  Cause I=m paranoid about going around there.

 

Jessie:   Well shit man . . . uh . . .

 

C.S.:    I mean we can but, you know . . . inaudible
. . .

 

                                                              .               .               .

 

C.S.:    [D]ude if you have to meet me at my house
that=s
cool.  But just let me go by and make
sure that I can do something about those girls there.  Because I don=t
want them girls to know what=s
up.  You know what I mean?

                                                              .               .               .

 

Jessie:   Ok.  .
. . give me about an hour then.  I=ll be over there in about an hour.

 

After Appellant agreed to go over
to Mr. Willis=s house,
about eight to ten surveillance units surrounded the house.  Based on previous deals between Mr. Willis
and the Appellant, Mr. Willis was able to provide the police with information
as to where Appellant would park his vehicle and how he would proceed to enter
the residence.  The plan was to wait for
Appellant to arrive and park his vehicle under the carport and walk into the
fenced area of Mr. Willis=s
front yard.  At that point, Appellant
would be arrested so that in case he tried to run, he would at least be in a
fenced area.








Once the
surveillance units saw a vehicle approach the house, Detective Herman, who was
in contact with Mr. Willis via cell phone, confirmed that it was in fact
Appellant=s
vehicle.  The van also matched the
description provided by Mr. Willis; it was an off-yellow color and white color
and had a sign that read, AFirst
Class Painting@ on the
side.  Appellant parked the vehicle under
the carport, stepped out of the vehicle, and made his way towards the fenced
front yard.  At that point, police
officers approached and detained him. 
The officers proceeded to search his van where a couple of bricks of
marijuana, weighing less than four pounds, were located inside a tool box.

Officer Russell
then interviewed the Appellant who agreed to take the officers back to his
residence and gave consent to have his home searched.  Officer Russell testified that only a small
quantity of marijuana was found in an outbuilding on Appellant=s property.  Appellant was not immediately arrested
because he agreed to cooperate in some other investigations to help himself out
of this marijuana deal.

Officer Russell
testified that he knew the Appellant prior to September 6, 2000.  On a few previous narcotics investigations,
specifically dealing with marihuana, Officer Russell testified that he had made
personal contact with the Appellant.  On
previous occasions, Officer Russell had received information from three
different sources that Appellant was dealing marihuana.  Additionally, in April of 1999, an individual
arrested for possession of marihuana cooperated with police, telling them his
supply source was the Appellant.  He also
provided Appellant=s
address, vehicle description, and telephone number.  That incident and information provided led to
a search of Appellant=s
home where a small amount of marihuana was discovered.








After the hearing
on the motion to suppress, the trial court entered an order denying Appellant=s motion.  Having retained his right to appeal the trial
court=s denial
of his motion to suppress, Appellant timely filed this appeal.  

In his sole point
of error, Appellant asserts the trial court abused its discretion in denying 

his motion to suppress evidence
obtained as a result of the search of his vehicle and statements made
thereafter.  Specifically, Appellant
contends that the officers lacked probable cause to search his vehicle and that
his statements were a result of being unlawfully detained.   

Standard
of Review








A trial court=s ruling on a motion to suppress is
generally reviewed for an abuse of discretion. 
Villarreal v. State, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996); Gordon
v. State, 4 S.W.3d 32, 35 (Tex.App.-‑El Paso 1999, no pet.).  In reviewing a motion to suppress, we must
give almost total deference to the trial court=s
determination of historical facts, especially when the court=s findings are based on an evaluation
of credibility and demeanor.  State v.
Ross, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000); Carmouche v. State,
10 S.W.3d 323, 327 (Tex.Crim.App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex.Crim.App. 1997).  Where the trial
court has made no explicit findings of historical facts, as in this case, the
evidence must be reviewed in a light most favorable to the trial court=s ruling.  Carmouche, 10 S.W.3d at 327‑28.  We review de novo the trial court=s conclusions of law and the
application of those principles to the facts which do not turn on an evaluation
of credibility and demeanor, including Fourth Amendment search and seizure
law.  Ross, 32 S.W.3d at 856; Guzman,
955 S.W.2d at 89; Carmouche, 10 S.W.3d at 327.  Although great weight should be given to the
inferences drawn by the trial judges and law enforcement officers,
determinations of reasonable suspicion and probable cause are reviewed de
novo on appeal.  Guzman, 955
S.W.2d at 87, citing Ornelas v. United States, 517 U.S. 690, 116 S.Ct.
1657, 134 L.Ed.2d 911 (1996); see Loesch v. State, 958 S.W.2d 830,
831-32 (Tex.Crim.App. 1997).   However,
the trial court=s ruling
will not be reversed on appeal, even if made for the wrong reason, if the
ruling is supported by the record and correct on any theory of law applicable
to the case.  Villarreal, 935
S.W.2d at 138; see also Willover v. State, 70 S.W.3d 841, 845
(Tex.Crim.App. 2002); Ross, 32 S.W.3d at 855‑56.

Warrantless
Search of An Automobile

An officer may
conduct a warrantless search of a motor vehicle if the officer has probable
cause to believe that the vehicle contains evidence of a crime.  Powell v. State, 898 S.W.2d 821, 827
(Tex.Crim.App. 1994); Franklin v. State, 976 S.W.2d 780, 781‑82
(Tex.App.--Houston [1st Dist.] 1998, pet. ref=d),
citing Carroll v. United States, 267 U.S. 132, 155‑56, 45 S.Ct.
280, 286, 69 L.Ed. 543 (1925).  Probable
cause exists when the facts and circumstances within the knowledge of the
officer would lead a person of reasonable caution and prudence to believe that
the instrumentality of a crime or evidence will be found within the
vehicle.  State v. Ballard, 987
S.W.2d 889, 892 (Tex.Crim.App. 1999).  We
determine whether probable cause exists by considering the totality of the
circumstances.  Eisenhauer v. State,
678 S.W.2d 947, 952 (Tex.Crim.App. 1984). 
Officers are permitted to draw logical inferences and make intelligent
deductions from the totality of the circumstances.  Jackson v. State, 745 S.W.2d 4, 10
(Tex.Crim.App. 1988).








At the motion to
suppress hearing, Officer Russell testified that Appellant=s vehicle was not searched incident to
an arrest, but because he believed they had probable cause to do so.  Officer Russell detailed the information he
believe established probable cause which included Appellant=s cellular number, his address, a
description of the vehicle, the fact that Mr. Willis was providing information
against his penal interest, and the fact that the Appellant had previously been
caught in possession of marijuana. 
Although this was the first time Mr. Willis was used as an informant,
Officer Russell testified that he believed the information Mr. Willis was
providing was credible, in particular because it matched the information
Officer Russell already had about the Appellant.  Additionally, when Mr. Willis placed the
calls to the Appellant, Officer Russell testified that he recognized Appellant=s voice.  








On
cross-examination, Officer Russell agreed with Appellant=s
defense counsel that throughout Appellant=s
and Mr. Willis=s conversation,
the words marihuana, drugs, or narcotics, and any words indicating an amount to
be purchase were never affirmatively spoken. 
He also agreed with defense counsel that there was not an affirmative
verbal agreement to sell drugs between the Appellant and Mr. Willis.  On the surface, the only thing Appellant
agreed to do was to go to Mr. Willis=s
house and talk to him.  However, Officer
Russell testified that the Appellant did not appear confused at to what Mr. Willis
was asking of him.  In addition, Officer
Russell knew that Mr. Willis was setting up the deal to purchase marihuana from
the Appellant.  From the recorded
conversations between Mr. Willis and the Appellant, Officer Russell testified
that he was able to infer, based on his previous experience with the Appellant
and from talking to Mr. Willis, that what these two men were talking about was
an agreement to meet to purchase marihuana. 
That the conversation involved an agreement to the sale of drugs could
have been a logical inference that Officer Russell could have drawn from
listening to the conversation.  See
Jackson, 745 S.W.2d at 10.  The
conversations also indicate a desire on Mr. Willis=s
part to keep their meeting under the radar of his mother and some girls he
mentioned, which could have also lead a reasonable person to believe that there
was something unlawful about their meeting. 
Looking at the totality of the circumstances, we concluded that the
officers in this case had probable cause to search Appellant=s vehicle.

Appellant also
complains that the statements he made to the police were a result from an
unlawful detention.  There is no dispute
that Appellant was not under arrest and Appellant does not challenge the
voluntariness of his statements.  Having
found that the officers had probable cause to search the vehicle, we find that
Appellant=s
subsequent voluntary statements were properly admitted by the trial court.  See Balentine v. State, 71 S.W.3d 763,
774 (Tex.Crim.App. 2002).  We therefore
overrule Issue One.

We affirm the
trial court=s
judgment.

 

 

July
29, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)