**Manzell SENTER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 40142.**

Court of Criminal Appeals of Texas.

March 1, 1967.

James H. Martin, Dallas, for appellant.

Henry Wade, Dist. Atty., Robert H. Stinson, Asst. Dist. Atty., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is hog theft; the punishment is confinement in the Texas Department of Corrections for ten years.

Appellant's sole ground of error is the sufficiency of the evidence to support the "taking" of the six hogs alleged in the indictment.

The record reveals that on April 6, 1966, the date of the offense, Herman Pinson, the complaining witness, was the owner of a 20 acre hog farm in Dallas County where he was raising 500 hogs. The rectangular-shaped farm was completely surrounded by hog proof fencing and there was only one entrance gate. A number of pens were located on the farm. As we understand the record, the particular pens in question in the case at bar consisted of a small feeding pen adjacent to a loading pen which adjoined a loading chute. The feeding pen is entered from the pasture area by a gate. Another gate leads from the feeding pen into the loading pen, and the loading pen is separated from the loading chute by a locked gate to which only Pinson had a key. Pinson testified that when he left the farm on the day in question there were no hogs in the pens and chute described above and the gates were all closed. He further testified that he did not give the appellant consent or permission to take any of his hogs.

Charles Kale, an employee of Pinson's, secreted himself in an old truck on the farm to watch the hogs shortly after Pinson left at 5:00 p. m. on the day in question. At approximately 8:00 p. m. that evening Kale heard noises at the pens in question and saw three men. After some time elapsed Kale related, "I moved up close to the fence, and I watched where they were shutting the gate on the hogs and they got them in there." He testified that at this time the three men had six hogs in the loading pen. Kale then hurried to the home of a nearby neighbor, Andrew Brashear, to enlist his aid. Brashear and Kale returned to the pens and observed all three men lift two of the six hogs out of the loading pen over the four-foot locked gate into the opened end loading chute. At this point Kale and Brashear apprehended the three men at gun point. The Sheriff's office was called and a deputy subsequently

arrived and arrested the appellant and the two other men. Shortly after the arrest, the deputy, Bobby Baker, discovered an empty pick-up truck parked a quarter of a mile from the farm and took it into custody. Both Kale and Brashear identified the appellant as one of the three men involved. In describing the activities of the three men in the loading pen, Brashear observed that the appellant appeared to be in the "lead." The appellant offered no testimony at all.

In his brief appellant admits that a careful review of the facts reveals without a doubt an intent to steal the hogs and that great effort was made to maneuver the hogs into a place where they could be loaded into a vehicle and carried away. It is his contention, however, that evidence fails to show that the appellant obtained the complete, independent and absolute possession and control of the hogs adverse to that of the owner; that the evidence establishes only an "attempt to commit theft" and there is no such offense. He contends that the hogs were still on the owner's property, and to have completed the offense of theft the hogs would have to have been loaded into a vehicle capable of asportation, although asportation is not necessary.

■ There is no such offense as "attempt to commit theft", but with the remainder of appellant's contention we cannot agree.

■ In 1 Branch's Ann.P.C., 2nd Ed. p. 66, Section 2614, the rule is well stated:

"To constitute a taking, the property must be brought under the dominion and control of the defendant with the power to take it into his manual possession; if the property is attached to the owner or to something else the taking is not complete if the attempt to take it is interrupted before it is severed or detached."

The text is supported by a number of authorities cited therein. See also Article 1412, Vernon's Ann.P.C.; 55 Tex.Jur.2d, p.

290, Sec. 15. The record does not reveal where on the farm the six Pinson hogs had been before they were observed in the pens in question with the appellant and his companions. We do know that the pens were empty when Pinson left at 5:00 p. m. on the day in question. Kale testified he saw three men running around the farm beating sticks together for some time prior to seeing the hogs in the particular pen. It appears, though, the hogs were removed from their accustomed place. It is further obvious that at least two gates had to be opened and closed to get the six hogs into the loading pen. They were seen shutting one of the gates on the hogs, and they were observed to have lifted two hogs over the gate into the loading chute. Though the hogs had not been carried away at the time of the apprehension, the evidence supports the fact that there had been a reduction to control and manual possession of the appellant and his companions.

In Jarrott v. State, 108 Tex.Cr.R. 427, 1 S.W.2d 619, it was pointed out that this Court has frequently held that one charged with theft may acquire that character of possession necessary to constitute his taking theft, even though the property is not removed from the presence of or the premises of the owner.

In Rodriquez v. State, Tex.Cr.App., 71 S.W. 596, it was said:

"* * * It has been held that, where the evidence shows that a party charged with theft from the person had succeeded in placing his hand in the pocket of the person from whom the property was sought to be taken, and had grasped the pocketbook, and was in the act of extricating it from the pocket, the theft was complete. For collation of authorities, see Files v. State, 36 Tex.Cr.R. 206, 36 S.W. 93. But in those cases the alleged thief had gotten the property clearly within his possession; his hand had grasped and taken control of the pocketbook. Where that is the case, the re-

moval of the property is not necessary * * *."

See also Harris v. State, 29 Tex.App. 101, 14 S.W. 390; Esparza v. State, Tex.Cr. App., 367 S.W.2d 861.

In support of his contention appellant cites Rosenbush v. State, 136 Tex.Cr.R. 50, 122 S.W.2d 1071; Clark v. State, 59 Tex. Cr.R. 246, 128 S.W. 131, 29 L.R.A.,N.S., 323; Herr v. State, 52 Tex.Cr.R. 53, 105 S.W. 190; Tarrango v. State, 44 Tex.Cr.R. 385, 71 S.W. 597; and Rodriquez v. State, Tex.Cr.App., 71 S.W. 596.

Rosenbush, supra, is clearly distinguishable upon its facts from the case at bar.

Herr, supra, and Clark, supra, were cases where the property attempted to be taken was attached to other property of the owner from which attachment there was no severance at any time. This same point was discussed in the Rodriquez and Tarrango cases, supra.

We do not regard the doctrine of these cases as applicable here. See Jarrott v. State, supra.

The trial judge carefully instructed the jury in his charge that:

"One of the essential elements of 'the offense of hog theft is the 'taking' of the animal by the accused. . You are charged that to constitute a 'taking' within the meaning of the statute, the hogs in question must be brought under the dominion and control of the accused, with the power to take said hogs into his manual possession, to the complete dis-possession and control of owner. The length of time of such possession and control is immaterial, however, the possession and control by the defendant must be complete."

The evidence is sufficient to support the jury's verdict.

The judgment is affirmed.