**Daniel Garcia MARTINEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–01–00463–CR.**

Court of Appeals of Texas,
El Paso.

July 10, 2003.

Rehearing Overruled April 20, 2003.

J.K. 'Rusty' Wall, Law Office of J.K. Rusty Wall, Midland, for appellant.

Al W. Schorre, Jr., Dist. Atty. of Midland County, Midland, for state.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice

Daniel Garcia Martinez appeals the revocation of his community supervision. On his guilty plea, Appellant was convicted of felony DWI. The trial court sentenced Appellant to 10 years' imprisonment, suspended, and placed Appellant on community supervision for a period of 5 years, which was later extended to 8 years by modification judgments. Appellant brings five issues for review, in which he contends the trial court abused its discretion in revoking community supervision. We affirm.

On March 6, 1997, Appellant was placed on community supervision with required participation in the Treatment Alternative Incarceration Program (TAIP). After a hearing on a State's motion to revoke community supervision, the trial court modified the terms and conditions of Appellant's community supervision on October 8, 1998. On May 4, 2001, the trial court again modified the terms and conditions of Appellant's community supervision after a hearing on a State's motion to revoke community supervision. In addition to lengthening the probation period, the judgment ordered Appellant confined to a Substance Abuse Felony Treatment Facility (SAFTF) for an indeterminate term of not more than one year or less than ninety days. Appellant was also to serve up to seventy-five days jail time as a condition of his community supervision pending transfer to SAFTF. On May 16, 2001, the trial court ordered Appellant to wear an electronic leg monitor as a condition of his continued community supervision, prior to being ordered to report to the Midland

County Jail. The order required Appellant to remain in his "designated residence" at all times unless given permission to leave by the probation department or during the authorized hours specified for his work and treatment schedules. Appellant was required to wear the electronic monitoring device at all times and ordered not to tamper, damage, or destroy the device.

On October 15, 2001, the trial court held a hearing on the State's motion for revocation of community supervision, which is the subject of this appeal. Appellant pled not true to the State's allegations that he violated the terms and conditions of his probation by failing to comply with the electronic monitoring program. At the conclusion of the hearing, the trial court found that the State had proven its allegations, revoked community supervision, and sentenced Appellant to six years' confinement in the Institutional Division of the Texas Department of Criminal Justice with treatment in a Substance Abuse Therapeutic Treatment Program prior to release. After a hearing on Appellant's motion for new trial, the trial court denied the motion. Appellant now timely appeals.

## REVOCATION OF COMMUNITY SUPERVISION

Appellant raises five issues in which he contends the trial court abused its discretion in revoking community supervision because: (1) it allowed the State to offer into evidence the community supervision department's rules and regulations, which differed from the court's order; (2) the court's order was ambiguous with respect to the technological requirements of the electronic monitoring equipment used by the department; (3) there was newly discovered evidence that the electronic monitor was susceptible to electronic interference; (4) as a jailed probationer, Appellant could not pay the monitoring fees when

they became due; and (5) Appellant offered contrary evidence as to the alleged tampering with the electronic monitoring device.

### Standard of Review

Our review of a community supervision revocation proceeding is limited to a determination of whether the trial court abused its discretion. *Jackson v. State,* 645 S.W.2d 303, 305 (Tex.Crim.App. 1983). In a community supervision revocation proceeding, the State bears the burden to establish the alleged violations of the trial court's order by a preponderance of the evidence. *Cobb v. State,* 851 S.W.2d 871, 873 (Tex.Crim.App.1993); *Becker v. State,* 33 S.W.3d 64, 66 (Tex.App.-El Paso 2000, no pet.). That burden is met when the greater weight of the evidence before the court creates a reasonable belief that the defendant violated a condition of community supervision. *Taylor v. State,* 604 S.W.2d 175, 179 (Tex.Crim.App. [Panel Op.] 1980); *Williams v. State,* 910 S.W.2d 83, 85 (Tex.App.-El Paso 1995, no pet.). In determining whether the allegations in the revocation motion are true, the trial court is the sole trier of facts, the credibility of the witnesses, and the weight to be given the testimony. *Taylor,* 604 S.W.2d at 179; *Becker,* 33 S.W.3d at 66. This Court must view the evidence presented at the revocation proceeding in a light most favorable to the trial court's ruling. *Garrett v. State,* 619 S.W.2d 172, 174 (Tex. Crim.App. [Panel Op.] 1981).

When the State has sustained its burden of proving the allegation by a preponderance of the evidence and no procedural obstacle is raised, the decision whether to revoke probation is within the discretion of the trial court. *Flournoy v. State,* 589 S.W.2d 705, 708 (Tex.Crim.App. [Panel Op.] 1979); *Gordon v. State,* 4 S.W.3d 32, 35 (Tex.App.-El Paso 1999, no

pet.). Under such circumstances, the trial court's discretion is substantially absolute. *Flournoy,* 589 S.W.2d at 708; *Gordon,* 4 S.W.3d at 35. If a single ground for revocation is supported by a preponderance of the evidence and is otherwise valid, then an abuse of discretion is not shown. *Sanchez v. State,* 603 S.W.2d 869, 871 (Tex. Crim.App. [Panel Op.] 1980); *Gordon,* 4 S.W.3d at 35.

### Evidence at Revocation Hearing

At the revocation hearing, the State called Ramona Sam, the supervisor of the electronic monitoring programs for the Midland County Community Supervision and Corrections Department, as a witness. Ms. Sam explained that when a probationer is released on an electronic monitor, an officer takes a monitoring unit to the probationer's home and connects it to a phone line. The officer reviews the rules and regulations of the program with the probationer, including informing him that he is not allowed to leave without authorized consent nor can he stray more than fifty feet from the unit. Probationers are also told their payment obligations for the equipment and are given a pager number to call if they experience any equipment or phone problems. Through Ms. Sam, the State introduced into evidence the acknowledgment form signed by Appellant, which states the rules and regulations of the electronic monitoring program.

Ms. Sam explained that if a probationer goes beyond a fifty foot perimeter, the monitoring unit dials a pager number and records the events as an unauthorized leave. When the probationer comes back into range, the monitoring unit records the event as an unauthorized return. Leaving and returning outside the window of a probationer's pre-approved schedule triggers the unit to record the event as unauthorized. There is a log connected to the system that records all activity. The monitoring log for Appellant indicated that unauthorized leave and return occurred on the following dates in 2001: May 14, May 16, May 28, and May 30.

Ms. Sam was the back-up probation officer who checked on the monitor signals on May 30. On that morning, the unit recorded an unauthorized leave at 10:59 a.m. Ms. Sam waited until the system recorded the unauthorized return at 11:24 a.m. and then called the residence. Ms. Sam spoke with Appellant, who explained that he was at the residence but outside in the back alley beyond the fifty feet range. Ms. Sam received a second unauthorized leave and return that day. She called Appellant's residence, but received no answer.

Jacinto Alcocer, a field officer for the Midland probation department, supervised Appellant in the electronic monitoring program for most of June 2001. Appellant was fitted with an electronic monitor leg strap. On June 2, 2001, Officer Alcocer received a transmission on his pager from the on-call officer, alerting him that there was an open band, that is, the leg strap holding the monitor on Appellant's person had been undone. Whenever the band has been opened, it shows "tamper transmitter" on the page. In response to this alert at 10:14 a.m., Officer Alcocer went by Appellant's house. Officer Alcocer arrived at 11 a.m., and Appellant returned home seventeen minutes later. Officer Alcocer saw that Appellant had the transmitter on. Upon closer inspection, Officer Alcocer discovered that the transmitter had been cut off and taped back on. Officer Alcocer took the cut band back and replaced it with a new one. The cut band was placed into evidence at the hearing.

On June 4, 2001, Officer Alcocer received an unauthorized leave signal at 1:32 p.m. and an unauthorized return at 2:02 p.m. Officer Alcocer called Appellant's res-

idence afterwards and spoke with Appellant. On June 8, Officer Alcocer received unauthorized leave and return signals and afterwards called the residence and spoke with Appellant. There were similar unauthorized leave and return signals on June 10 and June 11.[1] On June 13, 2001, there were two incidents of unauthorized leave and return signals. On both occasions, Officer Alcocer went to Appellant's residence, but Appellant was not there. On June 14, Officer Alcocer went to Appellant's residence after receiving an unauthorized leave signal and found that Appellant was not at his residence. On June 16, Officer Alcocer went to Appellant's residence after receiving an unauthorized signal and again found Appellant was not at his residence. There were two incidents of unauthorized leave and return on June 18 and neither time did Officer Alcocer find Appellant at his residence. On June 19, Officer Alcocer twice received unauthorized leave and return signals. During each period of unauthorized leave, Officer Alcocer called Appellant's residence. In the first incident, Officer Alcocer called the residence, but was unable to speak to Appellant. In the second, there was no answer at Appellant's residence.

Trina Peterson, Appellant's probation officer since June 6, 1997, testified that Appellant did not pay any of his electronic monitoring fees from May 4, 2001 until June 19, 2001, that being the day he was arrested for violating his electronic monitoring conditions. Based on her supervision of Appellant for several years and her knowledge of him, Ms. Peterson recommended that Appellant not be continued on community supervision and that he be sentenced to imprisonment.

Reyes Martinez, Appellant's mother, testified at the revocation hearing in Appellant's defense. Appellant was living with his parents while on community supervision. Mrs. Martinez recalled that Appellant had to wear a bracelet on his ankle. The family's home is out of town on two acres of land and they have goats on a ranch. From May 14, 2001 to June 19, 2001, Appellant helped her with the goats and on one occasion the goats escaped and Appellant helped her gather them back in. While helping his mother, Appellant's bracelet got caught on barbed wire. The barbed wire cut the rubber ankle bracelet, but it was not completely cut off. Mrs. Martinez explained that the rest of the bracelet was cut by accident when she stepped on it. While Appellant was walking ahead of her from the kitchen to the dining room, Mrs. Martinez called his name and that is when she stepped on it and it got cut all the way through. Mrs. Martinez stated that Officer Alcocer only went to their home once. When Appellant was gone, he was working out in the yard with the animals, caring for the yard, or taking his parents to the doctor. They keep the goats in a corral on the ranch, which is about a mile from the house.

 In reviewing the sufficiency of the evidence to support a finding that Appellant violated a condition of his supervision, we find that the trial court did not abuse its discretion by revoking Appellant's community supervision. Proof of a single violation is sufficient to support revocation of community supervision. *O'Neal v. State*, 623 S.W.2d 660, 661 (Tex.Crim. App.1981). Here, Officer Alcocer's testified that on six occasions he went to Appellant's residence after receiving unauthorized leave and return signals and found

---

1. The State abandoned the alleged violations committed on May 29, 2001 and June 11, 2001, because evidence at the hearing showed that at or near the time of the unauthorized absence, Appellant was reporting to Trina Peterson, his probation officer.

Appellant not at his residence. On June 2, 2001, Officer Alcocer discovered that the electronic monitor placed on Appellant had been cut off and taped back on. Mrs. Reyes Martinez offered an explanation as to how Appellant's monitoring ankle bracelet became damaged. It is the trial court's duty to judge the credibility of the witnesses. *See Langford v. State,* 578 S.W.2d 737, 739 (Tex.Crim.App.1979). The State met its burden of proof in showing that Appellant had violated at least some of the conditions of his probation. Therefore, we overrule Appellant's Issue Five. Because of our disposition on this issue, we find it unnecessary to address Appellant's remaining issues.

We affirm the trial court's judgment.