In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00018-CR


______________________________




MARLA AMELIA RODRIGUEZ, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


 Gregg County, Texas


Trial Court No. 35775-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Marla Amelia Rodriguez has appealed from her open plea of guilty to the offense of burglary
of a habitation. See Tex. Penal Code Ann. § 30.02(c)(2) (Vernon 2003). She was sentenced by
the trial court to five years' confinement.

 On appeal, Rodriguez contends her sentence is disproportionate to the crime and violates
societal norms, thus violating the Eighth Amendment, citing Kennedy v. Louisiana, ___ U.S. ___,
128 S.Ct. 2641 (2008). To preserve such complaint for appellate review, Rodriguez must have
presented to the trial court a timely request, objection, or motion that stated the specific grounds for
the desired ruling, or the complaint must be apparent from the context. See Tex. R. App. P.
33.1(a)(1);  Harrison  v.  State,  187  S.W.3d  429,  433  (Tex.  Crim.  App.  2005);  Williams  v.
State, 191 S.W.3d 242, 262 (Tex. App.--Austin 2006, no pet.) (claims of cruel and unusual
punishment must be presented in timely manner); Nicholas v. State, 56 S.W.3d 760, 768 (Tex.
App.--Houston [14th Dist.] 2001, pet. ref'd) (failure to complain to trial court that sentences were
cruel and unusual waived claim of error for appellate review). We have reviewed the record of the
trial proceeding. No relevant request, objection, or motion was made. And, while this Court has
held that a motion for new trial is an appropriate way to preserve this type of claim for review, (1)
Rodriguez' motion for new trial did not contain an allegation that the sentence was disproportionate
to the offense. She has not preserved such an issue for appeal.


 Therefore, we affirm the trial court's judgment.


 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: August 28, 2008

Date Decided: August 29, 2008


Do Not Publish




1. See Williamson v. State, 175 S.W.3d 522, 523-24 (Tex. App.--Texarkana 2005, no pet.);
Delacruz v. State, 167 S.W.3d 904 (Tex. App.--Texarkana 2005, no pet.)).


     



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Alvin Dewayne Strong pled guilty to theft in each of five cases, tried together. In this
case, he was charged with theft of a generator and trowel machine owned by Mike
Ferguson.


 Pursuant to a plea agreement, his punishment was assessed in each of the
five cases at two years' confinement in a state jail and a $500.00 fine. Imposition of the
confinement was suspended in each case, and Strong was placed on community
supervision for five years. Less than two months later, the State filed a motion to revoke
Strong's community supervision, alleging he had committed another theft. At the hearing
on the State's motion, the trial court revoked Strong's community supervision and
sentenced him to the two years' confinement. In his sole issue on appeal, Strong contends
the trial court abused its discretion in revoking his community supervision. We affirm the
judgment.
          At  the  revocation  hearing,  Steve  Tibbetts,  rental  manager  for  Barnsco,  Inc.,
and Roy L. Baird, a detective with the Dallas Police Department, testified to the following
sequence of events. Tibbetts testified he received a telephone call from a person
identifying himself as an employee of Austin Bridge and Road Company. The person
placed an order allegedly on behalf of Austin Bridge and Road. Because the job address
and purchase order number did not correlate to any jobs or purchase order numbers
typically used by Austin Bridge and Road, Tibbetts contacted the Barnsco sales
representative who handled the Austin Bridge and Road account. Tibbetts was informed
the purchase order number was not genuine and the name provided by the caller was not
the name of any employee at Austin Bridge and Road. Tibbetts then contacted the Dallas
Police Department. 
          Several detectives, including Baird, stationed themselves in the Barnsco equipment
yard and posed as Barnsco employees. When Strong arrived at Barnsco, he identified
himself as being "with the Austin Bridge and Road Company" and was there to pick up the
equipment ordered with the (fake) purchase order number. Strong signed the rental
agreement documents and drove his car to the equipment yard. The equipment ordered,
including several additions to the original order, included an automatic cut-off saw, a
demolition and rotary hammer, and a bit, with a combined value of about $1,725.00. 
Barnsco employees then carried the equipment to Strong's car and transferred the
equipment to Strong. Strong then loaded the equipment into the trunk of his car. After the
equipment had been placed in the trunk by Strong, the Dallas police detectives identified
themselves and placed Strong under arrest. 
          Strong testified to a slightly different account of the events. Strong testified he was
the owner of Strong Construction Group, which was a subcontractor to Gilmer Texas
Construction. Strong denied representing he was there on behalf of Austin Bridge and
Road. According to Strong, he went to Barnsco on the day in question to view a propane-powered buffer that had been demonstrated to him the day before at another location. 
Although he admitted signing some documents, Strong testified he never read the
documents before proceeding to the equipment yard. Strong testified that, on his arrival
at the yard, the police officers immediately placed him under arrest. 
          According to Strong, the equipment had not yet been loaded in his trunk at the time
of the arrest. Strong claimed the police officers placed the equipment in his car in an effort
to frame him. He contended he was wrongly identified as the person attempting to steal
the equipment.
          Revocation of community supervision requires proof by a preponderance of the
evidence that the person on supervision has violated a condition of the supervision
imposed by the court. Cobb v. State, 851 S.W.2d 871, 873–74 (Tex. Crim. App. 1993). 
This burden is met when the greater weight of the credible evidence creates a reasonable
belief that the defendant violated a condition of his or her community supervision as the
State alleged. Martin v. State, 623 S.W.2d 391, 393 n.5 (Tex. Crim. App. 1981); Allbright
v. State, 13 S.W.3d 817, 819 (Tex. App.—Fort Worth 2000, pet. ref'd). A trial court abuses
its discretion when the State has not met its burden of proof. Garrett v. State, 619 S.W.2d
172, 174 (Tex. Crim. App. 1981); Lee v. State, 952 S.W.2d 894, 897 (Tex. App.—Dallas
1997, no pet.). 
          The decision whether to revoke community supervision rests within the discretion
of the trial court. Forrest v. State, 805 S.W.2d 462, 464 (Tex. Crim. App. 1991). Proof of
a single violation is sufficient to support revocation. Stevens v. State, 900 S.W.2d 348
(Tex. App.—Texarkana 1995, pet. ref'd); see Martinez v. State, 130 S.W.3d 95, 99 (Tex.
App.—El Paso 2003, no pet.). We review the trial court's decision regarding revocation of
supervision for an abuse of discretion and examine the evidence in a light most favorable
to the trial court's order. Garrett, 619 S.W.2d at 174; Pierce v. State, 113 S.W.3d 431, 436
(Tex. App.—Texarkana 2003, pet. ref'd).
          Strong contends the trial court abused its discretion in revoking his community
supervision because Barnsco consented to Strong's possession of the property. Because
Barnsco employees voluntarily relinquished the property to him, Strong contends Barnsco
provided effective consent for him to exercise control over the property.


 However, consent
given solely to detect the commission of theft is not effective consent. See Tex. Pen. Code
Ann. § 31.03(d) (Vernon Supp. 2005); Smith v. State, 766 S.W.2d 544, 545–46 (Tex.
App.—Houston [1st Dist.] 1989, pet. ref'd); Moore v. State, 659 S.W.2d 445, 448 (Tex.
App.—Houston [14th Dist.] 1983, no pet.). Tibbetts testified he knew that the purchase
order number used to order the equipment was not genuine, that he had called the police,
and that undercover police officers had been stationed in the equipment yard. The trial
court could have reasonably concluded the State proved lack of effective consent by a
preponderance of the evidence. 
          Strong also contends the trial court abused its discretion in finding he held himself
out as a representative of Austin Bridge and Road. Strong argues that his testimony either
negated the State's proof, or caused such a conflict with the State's proof that the State
could not have met its burden of proof. The trial court, however, as the sole trier of the
facts, determines the credibility of the witnesses and the weight to be given to their
testimony. Jackson v. State, 915 S.W.2d 104, 105 (Tex. App.—San Antonio 1996, no
pet.); Jones, 787 S.W.2d 96, 97 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd); see also
Houlihan v. State, 551 S.W.2d 719, 723 (Tex. Crim. App. 1977). Although Strong asserts 
he never claimed to be a representative of Austin Bridge and Road, the trial court could
have reasonably believed Tibbett's testimony that Strong "said he was with Austin Bridge
and Road Company" and was there to pick up the equipment ordered under the (false)
purchase order number. 
          Strong contends, in the alternative, that the trial court abused its discretion in
revoking his community supervision because Strong exercised insufficient control over the
property. Although Strong testified the equipment had not yet been placed in his car
before he was arrested, Baird testified Strong placed the equipment in Strong's trunk
before he was arrested. 
          The trial court is the sole judge of the credibility of witnesses, the weight to be given
their testimony, and the reconciliation of evidentiary conflicts. See Jackson, 915 S.W.2d
at 105; see also Houlihan, 551 S.W.2d at 723. The trial court was entitled to disbelieve
Strong's version of the events and to believe Baird's version instead. Further, theft is
committed once a person exercises control over property even if the property is not
ultimately removed from the presence or premises of the owner. Senter v. State, 411
S.W.2d 742, 744–45 (Tex. Crim. App. 1967); see Rider v. State, 567 S.W.2d 192, 197
(Tex. Crim. App. 1978). When the property is reduced to the control and possession of the
defendant, it is not necessary for the appropriation to be complete or for the property to be
permanently removed. Baker v. State, 511 S.W.2d 272 (Tex. Crim. App. 1974); Miera v.
State, 663 S.W.2d 508, 511 (Tex. App.—Amarillo 1983, no pet.). The fact something
prevented further use of the property does not preclude the act from being theft. Baker,
511 S.W.2d at 272.
          Viewed in a light most favorable to the trial court's judgment, sufficient evidence
exists to support the trial court's finding that Strong violated the terms of his community
supervision. The trial court, therefore, did not abuse its discretion in revoking Strong's
community supervision. 
 
 
 
          We affirm the judgment of the trial court.

                                                                Donald R. Ross
                                                                Justice

Date Submitted:      April 10, 2006
Date Decided:         June 6, 2006

Do Not Publish