# NO. 12-12-00113-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TED ANTHONY SMITH,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Ted Anthony Smith appeals the trial court's order revoking his community supervision. In one issue, Appellant argues that the evidence is insufficient to show that he violated one of the terms of his community supervision agreement. We affirm.

### BACKGROUND

A Smith County grand jury indicted Appellant for the felony offense of driving while intoxicated alleged to have occurred on or about July 9, 2011.[1] On December 9, 2011, Appellant pleaded guilty and was placed on community supervision for a period of ten years. As a condition of community supervision, Appellant was required to wear a Secure Continuous Remote Alcohol Monitor (SCRAM unit or bracelet). On February 13, 2012, the State filed its first application to revoke Appellant's community supervision, alleging that Appellant tampered with the SCRAM bracelet or associated equipment on or about January 30, 2012. Appellant pleaded "not true" to the State's tampering allegation.

---

[1] *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b) (West Supp. 2012).

After a hearing on the State's application to revoke, the trial court found that Appellant tampered with the SCRAM unit, revoked his community supervision, and assessed a sentence of imprisonment for ten years. This appeal followed.

**REVOCATION OF COMMUNITY SUPERVISION**

In his sole issue, Appellant argues that the evidence is insufficient to support revocation of his community supervision.

**Standard of Review**

In a revocation of community supervision proceeding, the state must prove that the defendant violated one of the conditions of his community supervision by a preponderance of the evidence. *Hacker v. State*, 389 S.W.3d 860, 864-65 (Tex. Crim. App. 2013). The state satisfies this standard when the greater weight of the credible evidence before the court, viewed in a light most favorable to the ruling, creates a reasonable belief that a condition of community supervision has been violated as alleged. *See id.* at 865; *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006); *Jones v. State*, No. 12-11-00308-CR, 2012 WL 4502292, at *1 (Tex. App.—Tyler Sept. 28, 2012, pet. ref'd) (mem. op., not designated for publication).

In determining whether the allegations contained in a revocation application are true, the trial court is the sole trier of fact and sole judge of the credibility of the witnesses and the weight to be given their testimony. *Hacker*, 389 S.W.3d at 865; *Martinez v. State*, 130 S.W.3d 95, 97 (Tex. App.—El Paso 2003, no pet.) Accordingly, we review a trial court's revocation of a defendant's community supervision for abuse of discretion. *Hacker*, 389 S.W.3d at 865; *Rickels*, 202 S.W.3d at 763; *Martinez*, 130 S.W.3d at 97.

**The Evidence**

Appellant's conditions of community supervision prohibited Appellant from attempting "to remove, circumvent, or tamper with" the SCRAM bracelet or any of its associated equipment. The SCRAM bracelet contains three sensors. One sensor measures the bracelet temperature to detect possible tampers and removals. A second sensor, the infrared (IR) sensor, measures the distance between the leg and the bracelet by using an infrared beam that is measured in volts, which is referred to as the IR reading. When the bracelet is initially installed on an individual, a baseline IR reading is established. Deviation from the baseline reading occurs when something is

2

placed between the bracelet and the leg. The third sensor measures the individual's transdermal alcohol concentration (TAC), which is an estimation of the individual's blood alcohol concentration.[2]

John O'Donnell installed the SCRAM bracelet on Appellant's leg. Prior to the installation, Appellant was given a contract and required to watch a video that explained how the SCRAM technology operated. O'Donnell testified that he "went over the contract" and "reiterate[d] everything" that was in it.

According to O'Donnell, Appellant was informed that the IR sensor measures the distance between the leg and the bracelet, and if it deviates for an extended period of time, it "will show that either something's gotten in between [the leg and the sensor] or the bracelet's too loose." O'Donnell testified that he "make[s] sure [to] reiterate that nothing's to come in between the bracelet [and the leg]." Appellant confirmed at the revocation hearing that he had received, read, and understood the instructions relating to the SCRAM bracelet's installation and maintenance.

Brad Burger, a field technician and custodian of records for the company servicing the SCRAM bracelets, testified that if an object is placed between the SCRAM bracelet and the leg, an accurate TAC cannot be taken. For example, if a sock is between the leg and the bracelet, the alcohol sensor would read the TAC as zero because it would be taking the alcohol concentration of the sock instead of the alcohol concentration of the leg. Burger also testified that when an object is placed between the leg and the bracelet, the reading from the IR sensor increases "significantly." When the IR reading remains at an increased voltage for an extended period of time, it will register as a "confirmed tamper" and a noncompliance report is generated.

The IR sensor detects tampers, which are categorized as obstructions, removals, cut straps, and damage. O'Donnell testified that a tamper by obstruction began on January 30, 2012, at 9:17 p.m. and ended on January 31, 2012, at 10:11 a.m. The report generated from Appellant's SCRAM bracelet also showed that the TAC reading measured zero while the IR reading increased during this time period. Other testimony confirmed, however, that an obstruction type of tamper would trigger a report regardless of whether the obstruction was intentional. Thus, a sock, pajama pant, or bed sheet accidentally caught between the leg and bracelet could cause an obstruction that

_____

[2] Our explanation of the SCRAM technology is derived from testimony of State's witnesses, State's Exhibit 2, and Defendant's Exhibit 1.

3

would be classified as a "confirmed tamper" if it lasted for an extended period of time. Neither of the State's witnesses could testify as to what action by Appellant caused the bracelet to register the tamper by obstruction.

Appellant and his girlfriend both testified at the revocation hearing. Each testified that Appellant was in the Smith County Jail until 4:58 a.m. on January 30, 2012, because he was required to serve ten days in jail as a condition of his community supervision. Appellant's girlfriend met him at approximately 10:00 that morning to take him to her house, where he stayed while she was at work. Appellant had no mode of transportation, and Appellant's girlfriend drove him home that evening. They arrived at approximately 8:45 p.m. on January 30, 2012.[3]

Appellant testified that after he returned home, he "downloaded" the monitor, "nibbled" on some food, took a shower, watched television, and fell asleep. Appellant testified that he slept until about 9:00 a.m. on January 31, 2012, and that he was required to be at work at eleven that morning. When asked whether he "put anything down in there to block" the bracelet, Appellant responded, "No, I did not. . . . I don't leave anything in between the monitor and my leg, no."

On cross-examination, Appellant testified that he wears a wristband just above his ankle when he goes to bed to prevent the bracelet from hitting his ankle bone. He also said he wears the wristband every night and wears long pajama pants during the winter. On the morning of January 31, Appellant did not notice anything unusual about the SCRAM bracelet. He was notified two days later that the bracelet had registered a confirmed tamper. Appellant testified that he went to O'Donnell to check the bracelet "[b]ecause I couldn't believe that they had a confirmed tamper on me. I mean, I was stunned because in my mind, you know—I know if I do any alcohol or mess with this leg monitor, I have—I have—I could go to prison."[4] Appellant testified that O'Donnell checked the bracelet's fitting and stated that it was "a little loose." Nothing else was done to determine whether the bracelet was "working properly."

---

[3] Appellant's girlfriend testified that Appellant had not consumed any alcohol that day because she does not keep alcohol in her home. But she also confirmed that she had no personal knowledge of whether Appellant consumed alcohol between 9:00 p.m. on January 30 and 10:00 a.m. on January 31.

[4] Appellant was asked, "[W]hat does tamper mean to you?" He answered, "Tamper meaning that I had tried to tear it up or I, you know, take it off or cut it in a way that, you know, to try to—tamper, like, you know, tear it up or break it or—to me, that's what it means."

4

**The Trial Court's Ruling**

Appellant's challenge to the sufficiency of the evidence is based on the premise that his definition of "tamper" did not include causing an obstruction that would prevent the bracelet from taking an accurate TAC reading. But Appellant's definition of "tamper" does not negate the fact that he had been informed multiple times that nothing was to come between the SCRAM bracelet and his leg, and that he would be violating a condition of community supervision if he attempted to remove, circumvent, or tamper with the bracelet. The evidence showed that something caused the IR reading to increase significantly and remain at a heightened level for a twelve-hour period while the TAC reading remained at zero. The fact that the State could not identify Appellant's specific act to cause the obstruction type of tamper does not render its proof insufficient.

It is evident from the record that there were four possible causes of the confirmed tamper: (1) Appellant accidentally caused an obstruction to last for more than twelve consecutive hours, (2) Appellant took some action that he believed was not tampering that caused an obstruction to last for more than twelve consecutive hours, (3) the SCRAM bracelet malfunctioned,[5] or (4) Appellant intentionally caused the obstruction between his leg and the SCRAM bracelet. Appellant testified that he did not leave anything between his leg and the bracelet on the night of January 30. However, the credibility of witnesses in a revocation hearing is solely determined by the trial court. *See Hacker*, 389 S.W.3d at 865; *Martinez*, 130 S.W.3d at 97. In this case, the trial court resolved the credibility issue against Appellant.

After viewing the evidence in the light most favorable to the ruling, we conclude that it was reasonable for the trial court to believe that a condition of Appellant's community supervision was violated as alleged in the State's application. *See Hacker*, 389 S.W.3d at 865; *Rickels*, 202 S.W.3d at 764. Therefore, the trial court did not abuse its discretion in revoking Appellant's community supervision. *See id.* at 764; *Martinez*, 130 S.W.3d at 97-98. Accordingly, we overrule Appellant's sole issue.

---

[5] Appellant labeled the generated report as having a "faulty reading," but this is not the same as a malfunction. Here, testimony revealed that when the IR voltage increases due to an obstruction, the TAC reading is inaccurate because it is taking the alcohol concentration of the obstruction and not of the leg.

## DISPOSITION

Having overruled Appellant's sole issue on appeal, we *affirm* the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered June 5, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

**JUNE 5, 2013**

**NO. 12-12-00113-CR**

**TED ANTHONY SMITH,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th Judicial District Court
of Smith County, Texas. (Tr.Ct.No. 114-1270-11)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed;** and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*