COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| PHILLIP MARCUS BOLDING, | § | No. 08-23-00222- CR |
| Appellant, | § | Appeal from the |
| v. | § | 109th Judicial District Court |
| THE STATE OF TEXAS, | § | of Andrews County, Texas |
| Appellee. | § | (TC# 7467) |

## MEMORANDUM OPINION

Appellant Phillip Marcus Bolding appeals the revocation of his community supervision. For the reasons stated below, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2019, Appellant pled guilty to burglary of a habitation with the intent to commit a felony. Tex. Penal Code Ann. § 30.02. He was sentenced to ten years, with the sentence suspended while Appellant was placed on community supervision for ten years. The terms of community supervision relevant to this appeal required Appellant to do the following:

1. Commit no offense against the laws of this State or any other State of the United States;

2. Avoid injurious or vicious habits, avoid the use of alcoholic beverages, the illegal use or possession of dangerous drugs or controlled substances, and the possession or use of any deadly weapon or firearm;

. . .

14. Perform 150 hours of community service at the direction of the Andrews County CSCD administration . . . at the rate of FIVE hours per month or as otherwise directed by said department so that all community service is fully completed within one-half of the probationary period herein assessed . . . .

On December 29, 2022, the State filed a motion to revoke Appellant's probation. It alleged that Appellant committed the following violations of his terms of community supervision: (1) hindering the apprehension or prosecution of known felon; (2-7) using fentanyl, amphetamines, methamphetamines, benzodiazepines, alprazolam, and cocaine; (8) failing to pay supervision fees; and (9) failing to complete any of the required hours of community service.

Appellant pled not true. At the hearing on the State's motion, Andrews County Sheriff's Deputy Brittany De La Cruz testified that on December 8, 2022, she saw a truck that was reported to be stolen by Charles Pipkin at the RV where Appellant resided. When Deputy De La Cruz questioned Appellant, he said that the truck "had just showed up a few hours ago" and that he did not know where Pipkin was. But Deputy De La Cruz heard movement from inside Appellant's RV and when she sent inside, she found Pipkin trying to hide under the bed. Appellant was arrested for hindering apprehension of a felon.

Adrian Tarango, Appellant's community supervision officer, also testified. He stated that in October 2022, Appellant admitted to using fentanyl. Appellant was drug-tested, and the results showed that he had also used amphetamines, methamphetamines, cocaine, alprazolam, and benzodiazepines. Tarango scheduled a substance abuse evaluation but when he called Appellant to tell him to report for the evaluation, he was unable to reach Appellant. Tarango also testified that Appellant had not completed any of his required community service hours.

Appellant called Justin Wilson, his employer and landlord, to testify. Wilson testified that he paid for Appellant to go to drug treatment, but that Appellant left before completion of the

program because "[h]e had a conflict with an individual in there." Nonetheless, he said that Appellant was a "fantastic worker," that he would continue to employ and house Appellant if he remained on probation, and that he was willing to assist the probation department in making sure Appellant met his requirements.

The trial court found that all the allegations except for the failure to pay supervision fees were true, revoked Appellant's community supervision, and sentenced him to ten years.

Appellant raises two issues on appeal. First, he argues that his arrest was illegal because there was no evidence that he intended to hinder the apprehension of a felon. Second, he argues that the probation department acted arbitrarily in withdrawing his conditional liberty. We address each point as it relates to the grounds for revocation.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's order revoking probation for an abuse of discretion. *Torres v. State*, No. 08-19-00214-CR, 2021 WL 2897302, at *2 (Tex. App.—El Paso July 9, 2021, no pet.) (not designated for publication) (citing *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)). In probation revocation cases, the State has the burden to prove by a preponderance of the evidence that a condition of supervision was violated. *Id.* (citing *Cardona*, 665 S.W.2d at 493). "This burden is satisfied when the greater weight of the credible evidence creates a reasonable belief that a condition of community supervision has been violated." *Id.* (citing *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006)). We review the evidence supporting the revocation order in the light most favorable to the trial court's decision, deferring to the trial court's credibility determinations and to the findings of the violations as true or not. *Id.* (citing *Garrett v. State*, 619 S.W.3d 172, 174 (Tex. Crim. App. 1981)). Proof of a single violation in a revocation hearing is enough to support revocation, and we will not find the trial court abused its discretion

3

if the evidence is sufficient to find as true any one of the alleged violations. *McBryde v. State*, No. 08-11-00004-CR, 2012 WL 225650, at *2 (Tex. App.—El Paso Jan. 25, 2012, no pet.) (not designated for publication) (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980)) *and Martinez v. State*, 130 S.W.3d 95, 99 (Tex. App.—El Paso 2003, no pet.).

## ANALYSIS

### A. Sufficient evidence established that Appellant violated the terms of community supervision by committing an offense.

Appellant challenges the first ground of revocation as being the result of an "illegal arrest." The gist of the argument is that Deputy De La Cruz did not have probable cause to arrest Appellant. She testified at the hearing that "[Appellant] refused to answer or say anything" but admitted that Appellant never actually said that Pipkin was *not* in the RV. From this, Appellant reasons that she arrested him based on a *non-answer* to her question as to whether Pipkin was in the trailer. Appellant buttresses his claim with Deputy De La Cruz's testimony that her decision to arrest Appellant also included his nervousness at the scene. And assuming that the arrest was illegal, Appellant argues that "the entire revocation proceeding began as the fruit of an unconstitutional arrest" which should never have been initiated.

We disagree. As grounds for revocation, the State alleged that Appellant *committed* an offense, not that he was *arrested* for one. An arrest does not violate the terms of community supervision. *Flores v. State*, 331 S.W.2d 217, 218 (Tex. Crim. App. 1959) ("[T]he arrest and filing of a complaint against a probationer would not alone authorize revocation of probation conditioned that he 'commit no offense against the laws of this or any other state or the United States."); *Dennis v. State*, No. 08-01-00207-CR, 2002 WL 1301577, at *2 (Tex. App.—El Paso June 13, 2002, no pet.) (same). The proper question is whether there was sufficient evidence that Appellant *committed* an offense.

The State alleged that Appellant hindered the apprehension or prosecution of another. A person commits that offense if, "with the intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense . . . , he: (1) harbors or conceals the other; (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or (3) warns the other of impending discovery or apprehension." Tex. Penal Code Ann. § 38.05. Appellant argues that lying about a person's whereabouts does not meet the elements of § 38.05. But the two cases he cites, *King v. State* and *Rodriguez v. State*, stand for the opposite–that lying can be evidence of intent. In *King v. State*, a police officer, who identified himself as such and displayed his gun, told the defendant that he was looking for suspect Brandon Bennett. *King v. State*, 76 S.W.3d 659, 661 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The defendant told the officer that Bennett was not there, but he was subsequently found in the house. *Id*. at 660. The court of appeals affirmed defendant's conviction under § 38.05, stating "Under these circumstances, a person could fairly deduce that Bennett's whereabouts were a matter of some urgency to police. Thus, a jury could reasonably conclude from the circumstances that appellant's intent in concealing Bennett's location was to hinder his arrest, prosecution, or punishment." *Id.* at 661.

Similarly, in *Rodriguez v. State*, law enforcement notified the defendant that they had an arrest warrant for Larry Lopez. The defendant told them that Lopez had already left for work, when he was actually hiding in the residence. *Rodriguez v. State*, 630 S.W.3d 522, 526–27 (Tex. App.—Waco 2021, no pet.). The court held that the jury could "reasonably [] infer that appellant's repeated lies about Lopez's location to law enforcement after being informed about Lopez's arrest warrant was intended to conceal Lopez's location, if only for a matter of seconds, so as to hinder his arrest." *Id.; see also Black v. State*, No. 2-07-023-CR, 2008 WL 1867967, at *2 (Tex. App.—Fort Worth Apr. 24, 2008, no pet.) (mem. op., not designated for publication) (affirming a conviction under § 38.05 when the defendant knew there was a warrant for his brother and lied to

5

police by saying he was not there and he had not seen him); *Sanford v. State*, No. 12-04-00330-CR, 2006 WL 1119257, at *2 (Tex. App.—Tyler Apr. 28, 2006, pet. ref'd) (mem. op. not designated for publication) (holding that it was reasonable to infer that the defendant's intent was to hinder apprehension when she knew police were looking for an individual and lied about her being in the vehicle); *Rotenberry v. State*, 245 S.W.3d 583, 588 (Tex. App.—Fort Worth 2007, pet. ref'd) ("Lying about the presence of a fugitive will 'obstruct or delay' the apprehension of the fugitive; thus, in the context of section 38.05, lying to police could constitute 'concealing.'").

Here, two law enforcement officers arrived at Appellant's residence asking about Pipkin and the truck parked there. Deputy De La Cruz testified that she asked Appellant "if he knew where Pipkin was at, and both the subjects [1] continuously denied knowing anything about the whereabouts of Mr. Pipkin." She agreed that Appellant did not say Pipkin was *not* in the trailer. But, this is not necessarily a contradiction of her earlier testimony. The trial court could have found that Appellant lied when he told De La Cruz that he did not know where Pipkin was, even if Appellant remained silent when asked if Pipkin was in the RV. The trial court could infer from this evidence that Appellant knew the police suspected Pipkin of a crime and that Appellant intended to protect him from being arrested by lying. This inference was sufficient to establish by a preponderance of the evidence that Appellant committed an offense in violation of his terms of community supervision.

### B. Even if Appellant had not committed an offense, the trial court could still consider Allegations #2–9.

The trial court also found true the grounds for revocation based on drug use and community service. Although we can affirm based solely on a single valid ground, *Moore*, 605 S.W.2d at 926

---

[1] Another individual was present at the residence, and she was also arrested for hindering arrest.

("[O]ne sufficient ground for revocation will support the court's order to revoke probation."), we also choose to address Appellant's contentions challenging his drug use.

Appellant argues that if his arrest was illegal, the remaining grounds for revocation "would not have been available" because the probation department did not intend to pursue revocation on those grounds until after Appellant was arrested. Appellant compares this situation to one where evidence is obtained through an illegal search or seizure. Just as the exclusionary rule prohibits using that evidence, Appellant argues that the State should be prohibited from relying on those other grounds to revoke his community supervision. He says allowing the State to rely on those grounds "would permit the State to profit from the wrongful conduct of its officers so long as some minor technical violation of a defendant's probation can be found."

Yet the exclusionary rule rationale is a poor fit to the situation here. The exclusionary rule, meant to deter police misconduct, prohibits the State from using evidence that it would *not otherwise have* but for an illegal search or seizure. *State v. Astorga*, 642 S.W.3d 69, 84 (Tex. App.—El Paso 2021, pet. ref'd) ("The primary purpose of the exclusionary rule is to deter unlawful police conduct by precluding the use of illegally obtained evidence."). But assuming *arguendo* that Appellant's arrest was illegal, the State would still have had evidence of the previous drug-use violations and community service violations. The State did not obtain evidence of these violations by making the arrest.[2] Therefore, even if it were error for the trial court to find the first allegation to be true, it could still consider the other grounds alleged for revocation.

---

[2] Nor do we agree with Appellant that his use of fentanyl, methamphetamines, amphetamines, benzodiazepines, alprazolam, and cocaine, was a "minor technical violation."

**C. Sufficient evidence established that Appellant violated the terms of community supervision by using drugs.**

Appellant does not argue that the evidence was insufficient to support findings that he used drugs. In fact, Tarango testified that Appellant admitted to using fentanyl and that testimony was not disputed. Grounds two through seven were each individually sufficient to revoke Appellant's probation.[3]

**D. The Community Supervision Officer's delay in filing the motion to revoke did not create a conditional liberty interest.**

Appellant argues that because Tarango did not originally plan on pursuing revocation based on drug use, he had a conditional liberty interest that was arbitrarily withdrawn. "Though defendants are not entitled to community supervision as a matter of right, once a defendant is assessed community supervision in lieu of other punishment, this conditional liberty 'should not be arbitrarily withdrawn by the court . . . .'" *Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012) (quoting *DeGay v. State*, 741 S.W.2d 445, 449 (Tex. Crim. App. 1987)). Appellant has not provided any authority, and we have found none, that an additional conditional liberty interest is created when a probation officer has grounds to file to revoke and does not immediately do so.[4] And a rule to that effect would run afoul of the general precept that "[t]he court, not an individual probation officer, has the authority to change the conditions of probation." *Vanderburg v. State*, 681 S.W.2d 713, 719 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd). As the Texas Court of Criminal Appeals explained:

> We further observe that neither a sheriff nor a probation officer has the authority to promise a probationer that probation will not be revoked. When the court extends clemency in the form of probation the relationship existing between the court and

---

[3] Accordingly, we need not address the final ground based on Appellant's failure to complete *any* community service hours during the years he was on community supervision.

[4] Tarango stated that he did not originally seek revocation based on drug use because he believed that treatment would "allow him to stay on probation." But we note that before the hearing in this case, Appellant attended a treatment facility but left before he successfully completed it.

the probationer is in a way contractual, and it is the court and only the court which can decide whether probation is to be revoked. . . . The record reflects that the District Attorney on his own motion instituted the revocation proceedings and the court acted upon the same as it had a right to do.

*Lasater v. State*, 456 S.W.2d 104, 106 (Tex. Crim. App. 1970); *see also Strey v. State*, No. 04-99-00776-CR, 2000 WL 1060380, at *2 (Tex. App.—San Antonio July 19, 2000, no pet.) ("Because the State is not bound by the recommendations made by probation officers, the State is not precluded from filing a motion to revoke based on reported probation violations even if the probation officer would recommend or initially sought a modification of the probation conditions.").

Because the State provided independent grounds on which Appellant's community supervision could be revoked which the trial court considered at a hearing, his conditional liberty interest was not arbitrarily terminated.

## CONCLUSION

The trial court properly considered all the State's allegations of Appellant's violations of the terms of community service. We hold that the evidence supported a finding of true on seven of those allegations and do not reach the issue of the eighth allegation. We affirm the trial court's order revoking Appellant's community supervision and sentencing him to ten years.

JEFF ALLEY, Chief Justice

June 17, 2024

Before Alley, C.J., Palafox, and Soto, JJ.
Soto, J., concurring without opinion.

(Do Not Publish)

9